## Rees *versus* Livingston.

*Competency of Witnesses.—Preponderating Interest a Question for the Jury.—Application to exclude improper Testimony, when to be made.— Conversations admissible as part of the* Res Gestæ.—*Title of Trustees to Profits of Trust Property.*

A firm having failed, the friends of one of the partners S., in order to enable him to support his family and educate his minor children, contributed a sum of money, under a deed of trust, to a trustee L. therein named, who was to employ S. as agent to manufacture and trade in his own name, but not for his own interest or advantage, except that a reasonable support and maintenance was to be allowed him for services rendered. Under this trust, S. started in business and continued for several years, when a former creditor, R., issued an execution and levied upon his stock, which being claimed by L., the trustee, an issue was formed under the Sheriff's Interpleader Act, on the trial of which B., one of the contributors, and S., the defendant in the execution, were offered and admitted as witnesses on the part of the trustee plaintiff, though objected to on the ground of interest. On writ of error it was *held:*

1. That though B. was one of the contributors to the original trust, yet as he was not directly interested in the suit between the trustee and the execution-creditor, and would neither gain nor lose by the verdict, he was a competent witness.

2. That S. being interested both for the plaintiff and defendant in the feigned issue, and no certain and preponderating interest having been shown for the plaintiff; was a competent witness; and that where the jury were instructed, that if they found his interest in favour of the plaintiff was greater than any which he had in favour of the defendant, they should reject his testimony altogether ; the admission of the witness was proper.

3. Where subsequently it appeared on the trial, that the witness S. had a wife living, who was interested, not in the fund claimed by the trustee plaintiff, but in certain profits that it might yield after the payment of interest, which would have made him incompetent, on account of the policy of the law; and the defendant did not avail himself of the disability when it was discovered, by asking to have the testimony stricken out, but permitted the case to close, and argued upon its effect both to the court and jury: *held,* that he could not afterwards complain, that the court in their charge had refused to instruct the jury to disregard it.

4. It was not error to permit a witness to be questioned in regard to a conversation with the trustee at the time of the purchase of the goods for the trust, held long before the execution of the creditor was issued, or any controversy had arisen ; for the object of the question was the disclosure of a part of the circumstances of the purchase, part of the *res gestæ*, and, therefore proper.

5. It was not error to instruct the jury, that if the property levied on was the product of the business contemplated by the deed of trust, representing either the capital originally contributed or the profits thereof, the result would be the same, and the title would be in the trustee.

6. The fact that the business was conducted in the name of S., one of the defendants in the execution, would not affect the title of the trustee as against creditors whose debts existed prior to the arrangement of the trust deed; and the instruction of the court to the jury to that effect, if they believed the property levied on belonged to the trust fund, was not error.

7. Holdship *v.* Patterson, 7 Watts 547 ; Brown *v.* Williamson's Executors, 12 Casey 338, affirmed.

5 WR.—8

[Rees *v.* Livingston.]

ERROR to the District Court of *Allegheny county.*

This was a proceeding under the Sheriffs' Interpleader Act, in which an issue was formed between L. R. Livingston as plaintiff and James Rees as defendant, to determine the ownership to certain tinware, tools, and materials, which had been levied on at the suit of said Rees as the property of William B. Scaife *et al.,* late partners, trading as Scaife, Atkinson & Okely.

On the trial it was claimed by the plaintiff below that immediately after the failure of Scaife, Atkinson & Okely, the friends of Scaife agreed to contribute $4000 to start him in business under a trust created by the deed, in which Livingston was named as trustee for Scaife's family, and that, with the assistance of these contributions, Scaife started in business in the shops formerly occupied by the old firm, and continued to carry on the same ever since. The deed required an annual report to the contributors—giving them a right to withdraw their capital if the enterprise was not successful.

On the other hand it was averred, among other things, that immediately after the failure of Scaife, Atkinson & Okely, and before the alleged trust was accepted by Livingston, Scaife obtained possession of the shops of the old firm, and stock, tools, and materials belonging to them, worth over $3500; commenced and carried on business in his own name; and that the contributions, mentioned in the deed of trust, formed at best but a small portion of the capital employed by him in the business.

It was admitted that the business had always been carried on in the name of Scaife, and it was not alleged that he had ever rendered any account under the alleged trust.

The plaintiff, after offering the deed of trust, and evidence tending to prove the payment of the contributions, called Thompson Bell, one of the contributors, to prove *inter alia* how the business was carried on. Being objected to as incompetent, the assignment of his contribution to William M. Shinn, Esq., with the declaration of trust endorsed thereon by the latter in favour of Scaife's wife, was offered to show that the witness was disinterested, and he was examined. Objection was also made to a question propounded by plaintiff to Alexander Bradley, as stated in the third specification of error.

William B. Scaife was afterwards called by the plaintiff, Livingston, to prove *inter alia* that he carried on the business under the trust, and had no means of his own employed therein. He was objected to on the ground of interest; the objection was overruled and the witness examined at length. The court was afterwards requested by defendant to withdraw the testimony of this witness from the jury, which was refused.

The plaintiff requested the court to charge the jury:—

1. That if they believe the property levied on to have been pur-

[Rees v. Livingston.]

chased out of the fund contributed to Livingston for the purposes set forth in the deed of trust, their verdict should be for the plaintiff.

2. That if said property is the product of the business contemplated by said deed of trust, whether it represent the capital originally contributed or the profits and income thereof, the result is the same, and shows the title to be in the plaintiff.

3. That the fact of conducting the business in the name of William B. Scaife, one of the defendants in the execution, cannot affect the title of the plaintiff as against creditors, whose debts existed prior to the arrangement of the trust deed, if the jury believe that the property in question really belongs to the trust fund.

4. That the declarations of Oliver P. Scaife (a son and employee of William B. Scaife), cannot affect the question of title in this case.

The defendant asked the court to instruct the jury,—

1. To disregard entirely the evidence of William B. Scaife.

2. If the jury believe that before the trust was accepted by Mr. Livingston an arrangement was made between William B. Scaife, R. R. Frisbee, and Mr. Bradley, the assignee, whereby Scaife received the tools and stock mentioned in the bill in evidence, and paid for the same with his own funds, or out of the earnings of the business, the verdict of the jury should be in favour of the defendant.

3. If the jury believe that any of William B. Scaife's individual property was mingled with the alleged trust property, with the assent, expressed or implied, of the plaintiff, their verdict should be for the defendant.

The court below (HAMPTON, J.) affirmed the first three points presented by plaintiff's counsel, and answered the 4th by saying:

"It is true that the mere declarations of Oliver P. Scaife cannot affect the question of title in this case. But if his father, William B. Scaife, called, or authorized him to be called, as a witness, in a proceeding where the question of trust or no trust in the father was directly involved in determining the competency of the witness, and if the son be sworn in his father's presence, and testifies that he has no interest whatsoever in the result of the suit, and that his father was not carrying on business as agent for Livingston, but for himself alone and in his own name, this evidence, if given in the presence of his father, would certainly tend to contradict the testimony of William B. Scaife, as delivered here in this case. Its weight and value are entirely for the jury."

The defendant's points were answered thus:—

"1. When William B. Scaife was offered as a witness, the defendant's counsel objected to his competency solely on the ground of a direct pecuniary interest in the business to be carried on under this deed of trust, because he was to have a living for his

[Rees *v.* Livingston.]

services. This was the only objection then interposed. We were of the opinion then, and still are, that his interest in favour of the plaintiff was not so clear as to justify the court in rejecting him, and, under the decision of the Supreme Court, we admitted the witness, and referred the question of his interest to the jury.

"The question stood in that way until about the close of the evidence, when it was admitted that the wife of Scaife is still living, and after both the counsel for the defendant had concluded their arguments, both to the court and jury, this point is presented, and it is suggested that Scaife should be excluded, on the ground of his marital relation to his wife, one of the beneficiaries of the fund.

"It was not shown, when Scaife was offered as a witness, that he had any wife *in esse*, nor was there any objection made at the time to his competency on this ground, nor until after the counsel had commented fully on his testimony, somewhat to the prejudice of the plaintiff's claim.

"Now if this objection had been suggested when he was offered, I am inclined to the opinion that he would have been rejected on the ground of public policy, as the policy of the law rejects either husband or wife as a witness when the interest of the other is involved. But the absolute rejection of the witness at this stage of the proceedings, would involve the necessity of opening up the evidence again, and of allowing the plaintiff to make out his case by calling other witnesses; [and besides, the interest of his wife is contingent upon the will of a majority, in amount, of the contributors, who may, if they think proper, the moment the verdict might be rendered for the plaintiff, close up the concern and withdraw the fund; at least the principal with interest; which, for aught we know from the evidence, might absorb the entire property levied upon. The interest, therefore, to say the least of it, is contingent upon the whim or caprice of others.]

"For these reasons I am inclined to let the whole question go up to the Supreme Court for their determination. The court, therefore, refuse to charge as requested in this point, but refer the question of his interest to the jury; and if they should find that his interest in favour of the plaintiff is greater than that in favour of the defendant, they shall reject his testimony altogether.

"2. This point is affirmed, if the counsel mean to say that if Scaife received the tools and stock by an arrangement with Frisbee and Bradley, independent of this trust, and paid for them with his own funds, or out of the proceeds of the business carried on by him independently of the trust funds or the proceeds of them.

"In other words, to entitle the plaintiff to recover, he must prove to the satisfaction of the jury, that the property levied on

[Rees *v.* Livingston.]

is either property paid for by the trust fund, or by the proceeds arising out of that fund—its earnings or increase.

" 3. This point is also affirmed, if it means so mingled as to render its separation impossible—as the purchase of articles for carrying on the business with a mixed fund, partly his own and partly the trust-money; or in any other way to destroy the individuality of the fund."

Under these instructions there was a verdict and judgment for plaintiff. Whereupon the defendant sued out this writ, and assigned as cause for reversing the judgment that,—

1. The court erred in admitting Thompson Bell, one of the contributors to the alleged trust, as a witness for the plaintiff.

2. The court erred in overruling the objection made by defendant's counsel, and admitting William B. Scaife as a witness for the plaintiff.

3. The court erred in overruling the defendant's objection to the following offer, and permitting the witness, Alexander Bradley, to testify in relation to the matters therein inquired of, viz. : "Had you any conversation with L. R. Livingston, at and before the purchase of these goods, in relation to their being intended for the use of William B. Scaife ? If yea, state the substance of the conversation."

4. The court erred in affirming the plaintiff's second and third points.

5. The court erred in refusing to instruct the jury *" to disregard entirely the evidence of William B. Scaife,"* as requested in defendant's first point, and in referring the question of the interest of the witness to the jury.

6. The court erred in charging the jury in relation to the competency of the witness Scaife, as included above in brackets.

*John Barton, A. H. Miller,* and *James P. Sterrett,* for plaintiff in error.—1. The fact that the deed of trust gave the contributors the right to receive annual reports, and withdraw their capital after eighteen months' trial, rendered Thompson Bell one of the number incompetent, which incompetency was not removed by assigning his contribution to Mr. Shinn in trust for Mrs. Scaife.

2. Mr. Scaife was certainly interested in favour of the plaintiff, the trustee of his wife. The hardship suggested by the court, of compelling the plaintiff to open up his case again, and call other witnesses, should have no weight. Plaintiff should not have relied on a witness so clearly incompetent. The fact that Scaife had a wife interested in the business, was disclosed by Bell's assignment above mentioned, and the declaration of trust produced by Shinn.

3. The expression that " her interest was contingent upon the

whim or caprice of others" in the charge was clearly wrong. Mr. Scaife's testimony, we submit, should have been withdrawn.

4. The declaration of Livingston, as testified to by Bradley, was inadmissible, he being the plaintiff in the issue.

5. The second point of plaintiff is based on Holdship *v*. Patterson, 7 Watts 547, the principle of which is doubtful, amounting as it does to a judicial "bankrupt law."

*William M. Shinn*, for defendant in error.—1. The objection to the admission of Thompson Bell as a witness, is disposed of by Gillespie *v*. Miller, 1 Wright 247. Nor could the decision of the case on trial either way, affect the right of Bell to claim from Livingston to have his contribution refunded. But the transfer to Shinn made him a competent witness, as the rule in Post *v*. Avery is now held: Miley *v*. Todd, 5 Harris 101.

2. As to the competency of Scaife. The fund contributed was in "no manner or way to be for his interest, except only a maintenance allowed for services." He was the agent merely. But he was also defendant in the execution, and thereby interested both ways, the preponderance of which was for the jury.

3. The rule excluding improper testimony at any stage of a case, should never be used to work injustice, as it would do if it had been "fully commented on" by the counsel invoking this rule. But as plaintiff below had made out his case without the testimony of Mr. Scaife, the defendant would not have been benefited by excluding it, and, therefore, this court will not reverse for such an objection.

4. Even if public policy prohibited a husband from testifying for his wife, the rule has no application, for Mrs. Scaife had no interest in the event of the suit. She may have been one of the beneficiaries, but her interest was only in a portion of the profits, all of which may have been consumed, leaving nothing but the contributions, which were at any time liable to be withdrawn. The transfer from Bell did not exclude her, for even if she stood in his shoes his competency is undoubted. But she does not stand in his shoes. She is still a *cestui que trust*, entitled to a portion of the benefit of Bell's donation, except in the contingency of her outliving the minority of her youngest child, when a portion of it will be hers, giving her then the same interest which Bell had.

5. The defendant below was not injured by the answer to the question put to the witness Bradley, for Bradley had proved the same fact himself previously. It was part of the *res gestæ*, and, therefore, proper.

6. The counsel will not seriously ask this court to overturn

[Rees v. Livingston.]

the principle in Holdship v. Patterson, after its reaffirmance in Brown v. Williamson's Executors, 12 Casey 338.

The opinion of the court was delivered, November 18th 1861, by

STRONG, J.—That Thompson Bell was a competent witness for the plaintiff below, admits of no doubt. When called to testify, he had no direct interest in the event of the suit, and no rule of policy exists which would have justified his exclusion: see Gillespie v. Miller, 1 Wright 247.

The principal difficulty in the case arises out of the facts that William B. Scaife was admitted as a witness for the plaintiff, and that his testimony was not withdrawn from the jury at the request of the defendant. He was first objected to on the ground of interest alone, and the objection was overruled. It is far from being clear that if he had any interest at all, he had not a greater interest on the side of the defendant. It would rather seem that he had. There must be a certain and preponderating interest to justify the exclusion of a witness. Such, it is certain, was not shown in this case, and the court was, therefore, right in permitting the witness to testify, at the same time instructing the jury that if they found his interest in favour of the plaintiff was greater than any which he had in favour of the defendant, they should reject the testimony altogether.

A graver question subsequently arose, after his testimony had been given. In a late stage of the trial, it appeared that the witness had a wife living, who was interested, not in the fund which the plaintiff claimed, but in profits which it might yield after the payment of interest. Probably she would not have been a competent witness for the plaintiff on account of her interest, and, of course, her husband would not have been, on account of the policy of the law.

But, if the defendant desired to avail himself of this newly discovered disability, then, when the fact was revealed that the witness had a wife interested, was the time at which he should have moved the court to strike out the testimony. Instead of doing so, he undertook to use it. He permitted the case to close, and argued upon the effect of what the witness had stated both to the court and to the jury. After having done that, he cannot complain that the court, in their charge, refused to instruct the jury to disregard it. Having used it for his own purposes, without raising the objection which he knew to be fatal to it; having taken the chance of influencing the jury by it favourably to himself, he thereby waived his objection, and passed his time. We think, under the circumstances, the action of the court was right.

The question addressed to the witness Bradley was entirely proper. It related to the purchase of the goods for the trust,

before the execution of the defendant was issued, and before any controversy had arisen, and it sought only a disclosure of a part of the circumstances of the purchase.

The fourth and fifth assignments of error are disposed of by that class of cases, beginning with Holdship *v.* Patterson, 7 Watts 547, and ending with Brown *v.* Williamson, 12 Casey 388. The assignments are not sustained.

Judgment affirmed.