## Holdship *against* Patterson.

A benefactor may provide for a friend the means of subsistence for himself and family without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, of which he cannot be deprived by an execution against the trustee.

ERROR to the district court of *Alleghany* county.

Henry Holdship against Robert Patterson. Amicable action on the case.

Case stated by the court, which, by agreement of the parties, is to be considered as a special verdict.

The defendant, Robert Patterson, on the 1st of January 1823, and for some years previous, was a partner in trade with one Jonathan H. Lambdin in the business of bookseller and stationer in this place (Pittsburgh). On that day they failed to a large amount, and made assignments for the use of their creditors.

In two of them the plaintiff is an assignee. Nevertheless, a balance remains due and unpaid to the plaintiff, which was afterwards put in suit in the district court of the United States, and judgment obtained for the sum of 3766 dollars.

At the time this judgment was obtained the defendant had in his possession certain property, consisting of stock in the bookselling business, &c. &c., which he claimed as agent or trustee for his children. This property the plaintiff claimed or asserted to be the property of defendant, accumulated by his labour and industry since his insolvency, and therefore justly liable to be taken in execution to satisfy his former creditors. The defendant disclaimed the beneficial ownership of the property, claiming it to be in his children, for whom he acted as agent and trustee; and that therefore he had no right to convert this property into funds to pay his former debts; nor had the plaintiff a right to levy on it for the purpose of such satisfaction.

[Holdship v. Patterson.]

In order to settle this question amicably this issue has been formed and submitted to the court.  The inquiry has been conducted with great candour and liberality on both sides, showing a disposition to have the case decided on its merits, without regard to form, that the parties may each know their rights and their duties, and be governed accordingly.  Hence, although Robert Patterson is made defendant in the issue, yet as his children were the persons claiming the beneficial ownership of the property, and therefore should have been made the party defendant, the case was so treated, and Robert Patterson was himself examined as a witness, even without being required to be sworn, and his statement and discourse received as evidence and as the admitted facts of the case ; hence there is no discordant testimony or difference of opinion between the parties on the facts of the case, but they are admitted to be as in the testimony above, taken down by the court, and are briefly as follows:

Robert Patterson, at the time the firm of Patterson and Lambdin failed, as already stated, became completely insolvent, but honestly gave up all his property to his creditors.  In the year 1823 he was out of business and without means of support for his family, which consisted of a wife and six minor children.

While in this situation a number of his friends, in order to afford relief to his family, entered into the following agreement, dated Pittsburgh, January 15, 1824.

Whereas Robert Patterson, of the city of Pittsburgh, has been unfortunate in trade, is left without means for the support of his family, and under a load of debt which he cannot reasonably expect ever to be able to pay ; and whereas we, the subscribers, feeling influenced by motives of friendship and humanity, and confiding in his capacity, integrity, industry and economy, are disposed, under these circumstances, to render him such assistance for the support of his family as we deem proper.  We do agree and engage to contribute (on or before the 2d day of February next, or at such other time as may be specified opposite the signature of each) the sums severally annexed to our names, expressly and solely for the purpose of affording relief and support to the family of said Robert Patterson, and the means of educating his minor children, and in no manner or way for the interest or advantage of said Robert Patterson, except only a maintenance to be allowed him for his services rendered.

We also agree and direct that the amount of said sums shall be employed in the way and manner specified below, viz. that after Juliet, the eldest child of said Robert Patterson (she being now between nineteen and twenty years of age) shall, by proper document, be released from all obligation, and responsibility to her father, or control under his authority, so that she may act independently for herself ; we will pay over to her the several sums as above stated, taking her receipt for the same, redeemable in all four to five or six years, with payment of legal interest, semi-annually, provided that she engage to employ her father, and no other person without our

[Holdship v. Patterson.]

entire consent, as agent, to trade, deal, barter, buy and sell, in her name, for the above mentioned purposes, and for no other purpose, allowing him only a reasonable support for his services rendered; provided, also, that in case of her death or marriage the same trust shall descend, with all its provisos and appurtenances, to the next eldest child of said Robert Patterson, and so on, in the same way and manner as often as the occurrence of death or marriage or any other sufficient cause shall render the same necessary. Provided, furthermore, that in case of the death of said Robert Patterson before the aforesaid capital is entirely redeemed, as provided for above, said business, be it what it may, shall be continued under the discretion and friendship of the contributors of a major part of said trust (remaining unsatisfied) for the purposes as before specified. Again, when said capital shall have been entirely redeemed and refunded as provided above, the proceeds and stock remaining shall accrue to the benefit and use of the family of said Robert Patterson, he being hereby, in such event, appointed the guardian and trustee of the same for their use as long as he shall live, and for the equitable and fair distribution to his widow and children after his demise. It is farther hereby agreed and provided that said Juliet or her successor shall, once in every year, cause to be furnished a true and mercantile report of the state of said trust, in order that the contributors may be well informed whether their wishes are gratified by the above objects being realized and by a good prospect of success in future, or whether, on the contrary, from any cause whatever, the state of the case shall indicate a losing concern, and justify a close of the business and withdrawal of the capital, which right of dissolution we reserve to ourselves, if manifest want of success shall, after a trial of not less than eighteen months, make it appear to be absolutely necessary, in the opinion of the contributors of a major part of the whole sum thus entrusted.

Witness our signatures, &c.

In conformity with the spirit and design of the trust, specified on this sheet of paper, to my daughter Juliet, for the use and support of my family, &c., I do hereby renounce all my right to her personal services, and disclaim all demands of responsibility on her part, and all interest in any profits to myself, arising from her investiture of the said trust, which would otherwise be matter of right and subject of control belonging to me as her father.

Witness my hand and seal, day and date before mentioned.

Attest, Joseph Patterson.　　　ROBERT PATTERSON, [L. s.]

Form of receipt given by Juliet Patterson.

Received, Pittsburgh, February 1824, of John Towne, 100 dollars, in trust for the benefit and use of my mother and her children, interest payable half yearly, and the principal redeemable in all four

[Holdship v. Patterson.]

to six years, to be placed under the agency of my father for the above purposes.

    $100                            JULIET PATTERSON.

In pursuance of this agreement the parties thereto paid over to Juliet Patterson, the daughter of the defendant, the several sums therein stated, amounting in all to 2600 dollars. This money was vested by the defendant, according to the trust reposed in him ; and the bookselling business was conducted on this capital by Robert Patterson, as agent and trustee, under the above arrangement

The nature and terms of this arrangement, and the manner in which this business was carried on, were well known to every person here who chose to inquire ; and frankly communicated to all who entrusted any goods or property in the hands of the concern.

By the use of great economy in his family, and with the assistance of his son, the defendant succeeded not only in supporting himself and family from the avails of the business, but also in gradually accumulating profit (small indeed at first, but continually increasing), until, in the course of five or six years, the principal advanced was gradually withdrawn from the stock, and repaid, with interest, to the donors. In pursuance of the arrangement the defendant continued the business, with the profits then gained as stock in trade, for the benefit of the trust originally reposed in him.

He kept a close account of all purchases and sales, receipts, payments and expenses for the family (an abstract of which has been proven in evidence, and is made part of the case, if thought necessary, by written facts) till the year 1836. Some of the profits he vested in lands, which were conveyed to his son, Joseph N. Patterson, in trust, for the use of himself, and brothers and sisters (*prout* deeds). These lands have greatly appreciated ; and in 1836, when the defendant delivered over the stock in trade, to be managed by his son Joseph and partners (*vide* agreements dated the 1st of September 1836), the whole gains accumulated in the twelve years by the defendant, on the capital thus entrusted to him, amounted to not less than 20,000 dollars.

These facts, contained in the testimony of Robert Patterson, form the case upon which the court is called to decide—" Whether the property above mentioned is the property of Robert Patterson, and legally liable to be taken in execution by the plaintiff on his judgment aforesaid."

The court below (Grier, President) was of opinion that the plaintiff was not entitled to recover, and therefore rendered a judgment upon the facts stated for the defendant.

*M'Candless* and *Forward,* for plaintiff in error, cited, 2 *Atk.* 481 ; 2 *Vern.* 67, 490, 683 ; *Roberts on Fraud. Conv.* 424, 463.

*Lowry* and *Metcalf,* contra, stopped by the court.

[Holdship v. Patterson.]

The opinion of the Court was delivered by

GIBSON, C. J.—Though a right to the debtor's labour was given to an execution creditor by a provincial statute long since repealed, it exists not at the common law; and the defendant was therefore at liberty to dispose of his services for his own purposes and on his own terms. His tangible earnings would become liable to execution for his debts; but he was not under even a moral obligation to restrict his efforts exclusively to the liquidation of them. He might lawfully devote himself to the maintenance of his family only; and what was the engagement into which he entered? Though there was a stipulation for interest on the advancements, the object of the contributors was not gain but reimbursement and compensation for the risk of it: all beside was to be gratuitous. There was a violent probability that the capital would be lost; and the premium was in fact inadequate to the risk. The object then being to provide for the defendant's family, and not to set him up in business for himself, he was a purchaser of his own maintenance and no more; and he was a purchaser of a thing so inseparable from his person that it could not be reft from it by an execution. He had no predicable ownership of the original capital, or of the profits turned into capital to supply the place of the advancements restored to the contributors. These being an accessory of the advancements partook of their nature; and the contributors had the same right to dispose of them in advance that they had to dispose of the thing which produced them. Their interest in the fund thus created by them survived the reimbursement of their advancements; nor could the fruit of their bounty have been turned from its object by the defendant's creditors had it been applicable, by the terms of the trust, to his personal maintenance; for a benefactor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to a purpose or person not intended, would be an invasion of the donor's private dominion. It is contended, however, that the surplus beyond a reasonable provision for the family may be the defendant's own consistently with the scope of the trust. What did he give for it? Not his services; for they were to be compensated by his maintenance. A restriction of the gratuity to such a provision might leave a resulting trust for the donors, but nothing for the defendant. Yet there is no such thing in the original agreement: nor, consistently with the object of it, could there be; for reverses might reproduce the original destitution, and to withdraw a part of the capital would increase the danger of it. It is conclusive that the defendant, standing as he would have done had he served another firm on the same terms, was in no event to have more than a living; and the property therefore was not liable to the plaintiff's execution.

Judgment affirmed.