# Gillespie *versus* Miller.

*Wife's separate Property.—Evidence of Ownership.—Competency of Witness.*

1. Where a married woman claims to be the owner of personal property found by execution-creditors of her husband in the apparent possession of both; it is incumbent on her to rebut the legal presumption of ownership in her husband by competent and satisfactory evidence.

2. This may be done in part by written evidence of the fact that the property taken in execution had been purchased with funds contributed by a friend, for the purpose of enabling her to sustain the family through the agency of her husband.

3. Though this proof of ownership may be sustained or destroyed by other evidence tending to corroborate or weaken it, yet it cannot be rejected in the first instance if it be part of the transaction. It is a step in the process of elucidating the point in controversy.

4. It was therefore held not to be error on the trial of a feigned issue, under the Sheriff's Interpleader Act, to admit as evidence of such separate ownership by a married woman a writing, duly executed, acknowledged, and recorded, in which a sister of the claimant contributed a specified sum of money to be received, held, and used expressly and solely for the purpose of "affording relief and support" for the family, and in no manner for the interest of the

Gillespie *v.* Miller.]

husband, "excepting to the extent of the maintenance to be allowed him for his services to be rendered."

5. The grantor in such an instrument having no lien on the property, nor present right to withdraw the fund so contributed, is a competent witness for the wife in such an issue.

ERROR to the District Court of *Allegheny county.*

This was a feigned issue under the Sheriff's Interpleader Act to try the right of Mrs. Jane Miller to certain personal property which had been levied on by the sheriff under an execution against her husband, David Miller.

Joseph Gillespie held one or more judgments against David Miller and John Stewart, on which executions were issued, and several coal-boats, lines, oars, &c., in the possession of Miller, levied on by the sheriff. Jane Miller, his wife, thereupon gave notice to the sheriff that she claimed the property, on which the sheriff applied to the court for a rule on the parties interested to appear and maintain or relinquish their claims. The court directed a feigned issue in the name of David Miller and Jane Miller his wife, in right of said Jane Miller as plaintiff, and Joseph Gillespie as defendant.

On the trial the plaintiff offered in evidence a writing signed by her sister, Miss Cashdollar, duly acknowledged and recorded; in which, after reciting the destitute condition of her brother-in-law, David Miller, and his family, her confidence in his integrity, and her desire to assist them, she voluntarily contributed to Jane Miller $600, "expressly and solely for the purpose of affording relief and support of and for the family of said Miller," and "in no manner or way for the interest or advantage of said Miller himself, excepting only to the extent of the maintenance to be allowed him for his services to be rendered"—stipulating farther that said "Jane Miller should give her receipt for it redeemable in six years, employ Miller as her agent and none other, without the consent of Miss Cashdollar." In case of her death, Mr. Miller was to continue in business for the benefit of the family, and accounts were to be furnished, with the right to withdraw the capital if, after a trial of eighteen months, it should prove a losing concern. The deed was similar to that contained in the report of Holdship *v.* Patterson, 7 Watts 547.

This offer was made for the purpose of showing Mrs. Miller's title to the property levied on, to be followed by other evidence of the facts therein set forth, and that the property levied on was sold to, and purchased by the plaintiff under said deed or instrument of writing.

The defendant objected to the evidence as irrelevant and improper, but the court overruled the objection, and admitted the evidence, which ruling was the subject of the first bill of exceptions.

[Gillespie v. Miller.]

The plaintiff then offered Eliza Cashdollar as a witness. The defendant objected to her admission, on the ground that the deed of trust, as it was called, showed that she was interested. But the court overruled the objection, and directed the witness to be sworn, which was the subject of the second bill of exceptions.

The plaintiff then proved by several witnesses the insolvency of Miller, and the sale to him as agent of the articles levied on; and rested.

Under the charge of the court, the jury found in favour of the plaintiff, and judgment having been entered thereon, the defendant sued out this writ, and assigned for error—

1. The admission in evidence of the writing or deed of trust above mentioned.

2. The admission of Miss Cashdollar as a witness.

3. In holding that the deed of trust vested a title in Jane Miller in the property levied on, which would render it free from levy and sale for debts of husband.

*R. Woods* and *Thomas B. Hamilton*, for plaintiff, contended:—
1. That the deed was nothing more than the unsworn declarations of the husband and wife and her sister, and its admission was a violation of the plain rules of evidence: 6 Binn. 488; 1 S. & R. 278.

2. Miss Cashdollar was interested, and therefore incompetent. She was a creditor of Mrs. Miller, and could only be reimbursed out of this fund: 6 Barr 399; 3 S. & R. 427; 14 Id. 179.

3. On the third point they cited Hallowell v. Horter, 11 Casey 375; 1 Green. Ev. § 392; 1 Campb. 381; 2 Id. 301; 1 Sha. 507; 2 East 735; 5 Johns. Rep. 256; 1 Beav. 445; 3 Rawle 407.

*Marshall* and *Brown*, with whom was *C. B. M. Smith*, for defendant in error, cited Holdship v. Patterson, 7 Watts 547; Boyer v. Kendall, 14 S. & R. 178; 1 Greenl. Ev. 391.

The opinion of the court was delivered, November 9th 1860, by
Thompson, J.—Whenever a married woman in Pennsylvania claims a separate property in things in the apparent possession of both, against the creditors of her husband, she is at once put upon proof to show how she acquired the separate ownership, that the presumption of ownership, or property in the husband, may be rebutted. There are many cases to this effect in the books, and they need not be cited.

In the interpleader in this case it became necessary for Mrs. Miller to make this proof. She claimed that the property seized had been purchased by money contributed by her sister to her, to be used, not in setting up her husband in business, but to enable her, through his agency, to sustain and support the

[Gillespie *v.* Miller.]

family.   Her right to the use of the money was in writing, together with her acceptance of the terms on which it had been contributed to be used, and these papers were put on record.   Were they any evidence for the purpose of. showing her right independently of her husband?   We think they were. If her title to the money had been derived through a bequest, a bond, or mortgage, these instruments would certainly have been evidence to show it; and in what but in form is the difference? We perceive none.   In Patterson *v.* Holdship, 7 Watts 547, the same kind of evidence was received.

It is said the papers are but the unsworn declarations of the parties to them.   There may be truth in this, but the same might be said of a bond or mortgage, from which money may have been derived.   So might it be said of releases or conveyances of land, but the instruments must be received, and if the evidence does not show them to have a *bonâ fide* foundation, they must fail.   If they are parcel of the transaction they cannot be excluded in the first instance.   They are a step in the process of elucidating the question in hand.   If sustained by other matters, they may establish the fact contended for.   If not so sustained it is possible they may fail, but this test is after they are received and are tried by other things in the case.   So in regard to these papers.   It was the right of the party to give them in evidence. Their effect was dependent on other facts showing their soundness; but those other facts could only follow on their admission. We think there was no error in their admission.

2. Was Miss Cashdollar a competent witness?   The writings alluded to in the foregoing points were executed by her on the one part.   By them it appears that she had contributed to Jane Miller, her sister, the sum of $600, "expressly and solely for the purpose of affording relief and support" for the family of David Miller, who was married to her sister, and "in no manner or way" for his interest, "excepting to the extent of the maintenance to be allowed him for his services to be rendered." The arrangement was to last for six years, when she was to be reimbursed—or she might after a trial of eighteen months withdraw the capital invested, if not satisfied with its management.

It seems to me, under these circumstances, she was a competent witness.   To exclude her, it must be shown that she would either gain or lose by the verdict—that she would be directly involved in the consequences of it.   This is the test: Bennett *v.* Hetherington, 16 S. & R. 193; 1 Greenl. Ev. § 391.   But can this be done unless it be made to appear that she had a lien on the property in question in some way?   Certainly her deed of trust, as it has been called, gave her none such.   Certainly, too, Miller was not her agent in buying the boats, and most certainly she had not the power under the right to withdraw the capital,

[*Gillespie v. Miller.*]

for the period had not elapsed after which she might do so. Besides, if it had, it was her money she might withdraw, but there was no reserved power to follow the property into which it had passed, excepting through the ordinary mode provided by law.

If she had deposited her money with a banker, it could hardly be contended that she might not be a witness between him and a third party, on the ground that peradventure the money recovered might strengthen his capacity to pay her deposit. A creditor is a witness for his debtor, although he may be the eventual gainer by it. Such an interest is too contingent to disqualify. His interest is not the direct consequence of the verdict, it only contingently results from it. This never disqualifies. Miss Cashdollar could neither gain nor lose a cent by the verdict, as a necessary result of it, and was competent. It matters not what she may have thought; the competency of witnesses is tested by rules of law, and not by their opinions. The jury, it seems, believed the transaction to have been honest, and found accordingly. We see no error in the admission of the evidence for their consideration.

There is an assignment of error to the charge of the court, but no part of the charge is given on our paper-books, and no bill of exceptions to it appears. It was most likely abandoned. We cannot further notice it.

Judgment affirmed.

WOODWARD, J., dissented.