Borsch Estate.

582

Argued April 18, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William C. Ferguson, Jr.,* with him *Francis W. Sullivan* and *Strong, Sullivan, Saylor & Ferguson,* for appellant.

*Austin Miller Lee,* with him *Thomas H. Lee* and *L. Louis Breitinger,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 24, 1949:

This is an appeal from the confirmation of an adjudication of an executors' account in the orphans' court. The question is the power of a court to terminate existing testamentary spendthrift trusts because of·the renunciation, disclaimer and release by the life tenant

in accordance with the Act of May 28, 1943, P. L. 797, amended by the Act of June 1, 1945, P. L. 1337, 68 PS, 581 et seq. (These Acts have since been rewritten and re-enacted in part by the Estates Act of April 24, 1947, P. L. 100 section 3, 20 PS 301.3).

The Act of 1945, supra, provides: "Section 1. . . . Any power of appointment, including any power of consumption, whether general or special, other than a power in trust which is imperative, and any interest in, to, or over, real or personal property, or the income therefrom, held or owned outright, or in trust, or in any other manner which is reserved or given to any person by deed, will or otherwise howsoever, and irrespective of any limitation of such power or interest by virtue of any restriction in the nature of a so-called spendthrift trust provision, or similar provision, may be released or disclaimed, either with or without consideration, by written instrument signed by the person possessing the power or the interest and delivered as hereinafter provided."

"Section 2. A power or interest which is releasable or disclaimable under section one hereof may be released or disclaimed either absolutely or conditionally, and may also be released or disclaimed with respect to the whole or any part of the property subject to such power or interest, and may also be released or disclaimed in such manner as to reduce or limit the persons or objects or classes of persons or objects in whose favor such power or interest would otherwise be exercisable, except that no power or interest, subject to a spendthrift trust provision, or similar provision, may be released or disclaimed except in favor of a remainderman. No release or disclaimer of a power or of an interest shall be deemed to make imperative a power or interest which was not imperative prior to such release or disclaimer, unless the instrument of release or disclaimer expressly so provides."

"Section 4. This act shall apply to releases and disclaimers heretofore and hereafter delivered."

Testator, John L. Borsch, died February 9, 1921. Under the will all his real estate was devised to trustees subject to three active trusts, *each with spendthrift provisions as to income.* Testator's widow elected to take against the will. Testator's daughter, Catharine B. Laplace (now Carr), became entitled to all income from the three trusts for her life *subject to the spendthrift provisions.* The remainders were vested in the life tenant's son, Dr. Louis Borsch Laplace. The life tenant has received the income from two of the trusts since testator's death on February 9, 1921. She has also been receiving the income from the third trust since January 31, 1929, the date of the death of her brother, John L. Borsch, Jr.

On June 3, 1946, Mrs. Carr, the life tenant, after receiving the income on two trusts for over 25 years and on one trust for over 17 years, executed and delivered a release to the trustees, wherein she *now* seeks to renounce, disclaim and release her life interests in the spendthrift trusts, thus terminating them and vesting a fee simple and absolute title in the real estate in her son, the remainderman.

The auditing judge declined to decree the termination of the trusts. On exceptions the adjudication was confirmed. Of the six judges who participated in the decision, four of them, including the auditing judge, were of opinion that an existing spendthrift trust could not be terminated by release and agreement; that the Act of 1945, supra, was *not* retroactive in its operation, but if so construed would be unconstitutional as violating Article I, section 9 of the Pennsylvania Constitution. One judge, while concurring in the result, regarded the operation of the Act as retroactive and therefore unconstitutional insofar as it related to existing spendthrift trusts. One judge dissented. He regarded the

statute as operating retroactively, but was of opinion that it was constitutional as respects such spendthrift trusts. This appeal followed.

We are here concerned exclusively with the power to terminate *existing operating spendthrift trusts* because of the release and disclaimer by the income beneficiary. The right to release *powers of appointment* or other species of property interests is not before us. See, however, *Lyon et al. v. Alexander,* 304 Pa. 288, 156 A. 84; *Derbyshire's Estate,* 306 Pa. 278, 159 A. 439 (affirming 16 D. & C. 200) ; *Jackson Trust,* 351 Pa. 89, 40 A. 2d 393. It is true that no person may be compelled to accept a gift against his will: *Bute Estate,* 355 Pa. 170, 49 A. 2d 339. In the present case, however, the beneficiary *did* accept the gift and *enjoyed it for many years.* She *now* seeks by her release and disclaimer to repudiate the gift and annul the condition and restriction imposed by the testator, *under which she accepted it.* Co-extensively the remainderman demands termination of the spendthrift trust and conveyance to him in fee. Even *after* the acceptance of income under a spendthrift trust provision, a life tenant perhaps may still refuse to accept such income. (Compare Estates Act of 1947, section 3a, supra, which provides: ". . . nothing in this section shall authorize an income beneficiary of a spendthrift trust to release or disclaim his right to such income.") It is clear that the refusal of a spendthrift income beneficiary to receive the income does not enable the remainderman thereby to terminate the trust.

The question as to the validity of the statute relating to spendthrift trusts created *after* the Act is not now before us. It will suffice to say that the legislature, within constitutional limits, may determine who may receive and hold property and under what conditions: *Maginn's Estate,* 278 Pa. 89, 98, 122 A. 264; *Kates's Estate.* 282 Pa. 417, 420, 128 A. 97; *Willcox v. Penn Mutual Life Insurance Co.,* 357 Pa. 581, 593, 55 A. 2d

521. When, *prior to the Act,* a beneficiary of income subject to spendthrift trust provisions *accepted the gift,* this Court consistently held that the beneficiary could not *thereafter* terminate the trust by releasing, renouncing and disclaiming his interest. The basis for this doctrine rested upon the ancient maxim: *Cujus est dare, ejus est disponere*: The bestower of a gift has the right to regulate its disposal. Spendthrift trusts are sustained not because of the law's concern for the donee, but because the testator or donor possessed an individual right of property in the execution of the trust. *To permit a termination by agreement or release would be an invasion of the donor's property right.*

The doctrine of the enforceability of spendthrift trusts has been criticised in opinions in other states and by text book writers. The dissenting opinion in the court below cites a statement of Griswald, in his book, "Spendthrift Trusts": "And the settlor cannot be invalidly deprived of property of which he is no longer owner, especially in the usual case where he is dead when the issue arises." The learned dissenting judge also says: "The testator has no interest in the property after his death, which is subject to constitutional protection." True, there are no pockets in shrouds. The Constitution, however, is *not* protecting *present* ownership of property *of a decedent.* What it does protect is the property right possessed by the testator or donor, *to have enforced the limitations and restrictions affixed to the gift.*

As early as 1838 in *Holdship v. Patterson,* 7 Watts 547, Chief Justice GIBSON said, p. 551: ". . . a benefactor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. *He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to*

*a purpose or person not intended, would be an evasion of the donor's private dominion."* (Italics supplied.)

In *Harrison's Estate,* 322 Pa. 532, 185 A. 766, the late Chief Justice KEPHART said, p. 533: "Here appellant, the life beneficiary, seeks to terminate a trust under which she is to receive payments sufficient for her maintenance and by which she is protected from creditors and her own improvidence. This is in violation of testator's expressed intention and of his right to dispose of his property as he sees fit. *Such dispositive power* is *a property right* entitled to the full protection of our laws: Morgan's Est. (No. 1), 223 Pa. 228; Baughman's Est., 281 Pa. 23; Holbrook's Est., 213 Pa. 93." (Italics supplied.)

In *Riverside Trust Company v. Twitchell et al.,* 342 Pa. 558, 20 A. 2d 768, Mr. Justice DREW said, p. 561: ". . . it was said, in Morgan's Estate (No. 1), 223 Pa. 228, 230: 'The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of cujus est dare, ejus est disponere. It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, *the law holds that the donor has an individual right of property in the execution of the trust;* and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship v. Patterson, 7 Watts, 547.' See also Harrison's Estate, 322 Pa. 532, 533." (Italics supplied.)

And in *Heyl Estate,* 352 Pa. 407, 43 A. 2d 130, p. 411: "It is well settled in this Commonwealth, as was said by this Court in Morgan's Estate (No. 1), 223 Pa. 228, 230, 72 A. 498: 'The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of *cujus est dare, ejus est disponere.* It allows the donor to condition his bounty as suits him-

self, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that *the donor has an individual right of property in the execution of the trust;* and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship v. Patterson, 7 Watts, 547 . . . We repeat, spendthrift trusts are allowed not because the law concerns itself for the donee; he may conserve or dissipate as he pleases; the law's only concern is to give effect to the will of the donor as he has expressed it.' See *Riverside Tr. Co. v. Twitchell,* 342 Pa. 558, 561, 20 A. 2d 768. The law will see to it that his wishes and directions are observed. Furthermore, a beneficiary of such a trust is without power to terminate it, or to modify or ameliorate its restrictions by agreement with the trustee: *Miller's Estate,* 333 Pa. 116, 3 A. 2d 370." (Italics supplied.)

In *Morgan's Estate (No. 1),* 223 Pa. 228, 72 A. 498, this Court said, p. 230: "Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's *right of property.*" (Italics supplied.)

It is argued that the above decisions were in error and that the right of a testator or a deceased donor to have his spendthrift provisions enforced, should not have been based upon a *"right of property"* of a person now deceased. Nevertheless, from 1838 to 1945, in opinions by Chief Justices GIBSON and KEPHART and by Mr. Justice DREW, such principle became firmly imbedded in our law. Mr. Chief Justice MAXEY said in *Monongahela St. Ry v. Phila. Co. et al.,* 350 Pa. 603,

616, 39 A. 2d 909, "The doctrine of *stare decisis* is recognized and applied by the courts of this Commonwealth. In *Smith v. Glen Alden Coal Co. et al.,* 347 Pa. 290, 302, 32 A. 2nd 227, we said: 'A rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the imperative demands of justice.' "

The Act of 1945, supra, in terms, is made to apply to existing spendthrift trusts. It is, therefore, unconstitutional as applied to such trusts, being in violation of Art. I, Section 9 of the Constitution of Pennsylvania.

The decree must be sustained for an additional reason. Even though the life tenant, the spendthrift beneficiary, refuses to accept income, this constitutes no valid reason for terminating the trust. While the life tenant may *presently* decline spendthrift income (which in the interim may be distributed to others under the terms of the will or by law), it may subsequently develop that the creator of the trust was wiser than the beneficiary who may thereafter desire to repudiate her release and renunciation and receive *future* income. See *Heyl Estate,* 352 Pa. 407, 409, 43 A. 2d 130. It is a subterfuge, thinly veiled, to permit a life tenant under a spendthrift clause to release and disclaim her interest, thus accelerating the remainder, and then to permit the remainderman to terminate the trust. This is allowing, by indirection, that which this Court has consistently forbidden to be done directly. The Estates Act of 1947 (amending the Act of 1945), supra, prohibits the life tenant to so release and disclaim.

Irrespective of the true nature of the testamentary direction (i. e., whether or not it constitutes a vested *property right*), it is, nevertheless, a testamentary direction which always heretofore has been enforced by this Court. We said, in *Stoffel's Estate,* 295 Pa. 248, 145 A. 70, P. 251: "One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the

justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty. The law will not permit that to be accomplished by indirection which cannot be done directly. . . ."

As early as 1851 this Court said, in *Ervine's Appeal*, 16 Pa. 256, 265: "A just government ought as emphatically to protect wills as deeds and contracts. Because, by so doing, not only the rights of the living are secured, but also the rights of the dead—rights which all civilized nations regard. Those who are now the living will shortly be the dead. And we labor not only for the present, but for the future, and for those who shall be in that future."

The decree is affirmed at cost of appellant.

---

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

The Act of 1945, here in question, was enacted for the sole purpose of securing to citizens of Pennsylvania certain advantages afforded by the Federal tax laws, and *especially* in the case of *then existing* powers and interests. Accordingly the Act expressly stated that it was to apply to releases *"heretofore* and hereafter delivered"*. I agree, therefore, with the majority opinion that the Act is retroactive in its scope. I *cannot* agree, however, that that makes it unconstitutional as far as spendthrift trusts are concerned. It could be unconstitutional in that regard only if it impaired someone's property right. Whose property right does it impair? The majority opinion says that it infringes upon the right of a donor or testator to have his property disposed of exactly as he directed; reliance is placed upon the ancient maxim: *"Cujus est dare, ejus est disponere,"*— the bestower of a gift has the right to regulate its disposal. With the validity of that principle there cer-

tainly can be no quarrel, for the rights of an owner of property undoubtedly include the right to give it to another under such conditions and subject to such restrictions, not incompatible with the law, as he may see fit to impose. But the Act of 1945 does not impair that right which, indeed, the testator here *actually exercised* when he made his will and provided therein that his bequests to the life tenants should be subject to spendthrift trust provisions. By reason of that right on his part the life tenants could take and enjoy his bequests to them only "cum onere," that is, subject to those spendthrift provisions. But the testator's conceded right thus to dispose of his property as he saw fit is not incompatible with, and certainly does not destroy, the right of a beneficiary *to refuse the gift altogether.* That a beneficiary may renounce his legacy, and not be compelled to accept it against his will, was the very thing this Court expressly decided in *Bute's Estate,* 355 Pa. 170, 49 A. 2d 339, and, indeed, would seem so obvious as to preclude the need of discussion.

What seems to me to be the confusion in the majority opinion is its failure to distinguish between the right of a life tenant under such a spendthrift trust to accept and enjoy the bequest *free from the spendthrift trust provisions,* and his right to *renounce or disclaim the gift altogether.* The cases cited and relied upon in the majority opinion—*Holdship v. Patterson,* 7 Watts 547; *Harrison's Estate,* 322 Pa. 532, 185 A. 766; *Riverside Trust Co. v. Twitchell,* 342 Pa. 558, 20 A. 2d 768; *Heyl Estate,* 352 Pa. 407, 43 A. 2d 130—all dealt with the former, not the latter right; they were cases in which the life tenant was attempting to retain the benefits of the bequest in some form or other but freed, wholly or in part, of the spendthrift trust provisions. In the present instance the life tenant is making *a complete surrender of the gift,* and I know of no power of a court or any other tribunal that can compel her to accept it.

The Act provides that the release of the interest must be in favor of the remainderman, and the interest of the remainderman in the trust property is accordingly accelerated by the elimination of the life tenant's interest. The situation is wholly analogous to that in which a widow who is bequeathed a life estate by her husband elects to take against his will, in which event the interest of the remainderman is automatically accelerated with the same force and effect as if the widow life tenant had died: *Kern's Estate,* 296 Pa. 348, 145 A. 824; *Schmick Estate,* 349 Pa. 65, 36 A. 2d 305.

I would hold that the trust was terminated by reason of the life tenant's release to her son of all her right, title and interest in and to her father's estate.

Mr. Chief Justice MAXEY and Mr. Justice LINN join in this dissent.