Ryan Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Barry H. Hepburn,* for exceptant.

*Francis Shunk Brown, 3rd,* contra.

SAYLOR, J., March 10, 1961.—The executor-heir of a deceased remainderman has filed exceptions to the allowance of payments out of trust principal to the aged widower of a testatrix who died in 1949 naming her husband as sole life tenant of the spendthrift trust she created out of the residuary estate. The widower petitioned under the Estates Act of April 24, 1947, P. L. 100, for partial termination of the trust. Following hearing and audit of the trustee's account, the auditing judge made the award.

The will provides that at the death of testatrix' husband one-half of the principal of the residuary estate is to be paid over absolutely to testatrix's sister, Marie Camblos, Rudolph, and the income from the remaining half is to be paid to testatrix's nephew by marriage, William J. Cotter, for life, and on his death to his children.

Marie Camblos married Sebastian A. Rudolph in February 1959. On her death in January 1960 he became her executor and residuary heir. It is he who has objected to the award, as has the guardian and trustee ad litem appointed to represent the interests of minors and unascertained parties. Mr. Cotter made no objection and in fact testified in favor of the allowance.

William J. Ryan, the life tenant, was a real estate speculator and at one time was worth well over a million dollars. When in 1934 because of speculation he had lost his fortune his wife wrote her last will leaving in trust her entire net estate, except an automobile, for her husband, and naming her sister, Marie Camblos, Rudolph, as trustee. Testatrix and her husband had been married in 1908 and had lived together until her death in 1949. From 1923 the parties resided in the same house continuously until Mrs. Ryan died. The life tenant has lived there ever since.

Mrs. Camblos, Rudolph, for many years supplemented Mr. Ryan's income in various ways including purchases of food for him. Since her death there has been no such assistance. The life tenant has had no occupation for many years, and following a serious illness he has not been able to work. He pays the monthly house rent of $40 to the estate of Peter F. Kernan, who was testatrix's uncle. A subtenant pays the life tenant $60 monthly for an apartment on the third floor. The net amount of $20 is Ryan's only income in addition to approximately $1,900 a year from the trust. He receives no Social Security or pension payments.

At the hearing on the petition, the life tenant testified he was 85 years old and was physically unable to do without the maid who for many years had taken care of him and his house and had done the marketing, cooking and laundry work. For all of his expenses he said that he needed approximately $4,400 a year. The hearing judge allowed out of principal a payment of $250 forthwith, a monthly payment of $100, and the payment of such medical, nursing and hospital expenses as may be reasonably necessary for the life tenant's comfort and well being.

The auditing judge found that the primary purpose of the trust was the support and maintenance of testatrix' husband and that, after living with him in days of prosperity and days of adversity, it was testatrix' intent to secure his future. Hence, it would be unreasonable to believe that she intended that principal be preserved for her sister and the unborn issue of her nephew while the reasonable needs of her husband with whom she had lived for over 40 years would not be provided for. The auditing judge further found that the income from the trust was insufficient to sustain its principal purpose and that testatrix' intention was frustrated, the failure of purpose resulting

because of unforeseen circumstances increasing the needs of the beneficiary no less than when principal is depleted through asset impairment. Incidentally in her will testatrix directed her executrix to pay the life tenant $200 a month during administration.

The basis for the life tenant's position and the court's findings is section 2 of the Estates Act of April 24, 1947, P. L. 100, as amended, which provides:

"(a) Failure of Original Purpose. The court having jurisdiction of a trust, regardless of any spendthrift or similar provisions therein, in its discretion may terminate such trust in whole or in part, or make an allowance from principal to a conveyor, his spouse, issue, parents, or any of them, who is an income beneficiary, provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor, and notice is given to all parties in interest or to their duly appointed fiduciaries. But, distributions of principal under this section, whether by termination, partial termination, or allowance, shall not exceed an aggregate value of twenty-five thousand dollars from all trusts created by the same conveyor."

Notice of the petition and hearing was given to all interested parties including the guardian and trustee ad litem. All parties appeared at the audit. The guardian and trustee ad litem filed a report opposing any allowances. He did not file exceptions. The requirements as to notice were satisfied: Curry Appeal, 390 Pa. 105 (1957).

The sole exceptant's contention is that the court is without authority to award payments out of principal of a spendthrift trust unless all parties in interest therein agree to such award. There is no language in the act which requires such consent. It does provide

that all the parties in interest be given notice. This was done and they were fully aware of the life tenant's application.

It seems clear that testatrix intended to enable her husband to receive sufficient income to pay his living expenses and to prevent such speculation as would leave him penniless. The trust income from 1949 to January 1960 was adequate to permit Mr. Ryan to continue his residence at the family home because it was supplemented by payments made by his sister-in-law, Mrs. Camblos Rudolph, until her death. It has not been adequate since then.

The courts in various cases have denied relief to life tenants or remaindermen seeking final or partial termination of trusts. In others allowances have been made. Each case, however, must be examined for the facts existing when the application is made.

Cases cited by the exceptant are not directly apposite. Bosler Estate, 378 Pa. 333 (1954), involved the will of a decedent who died in 1916, long before the enactment of section 2(a) of the Estates Act of April 24, 1947. In his opinion, former Chief Justice Stern held that under the law then existing relief could not be granted where the settlor of a spendthrift trust is deceased as there can be no termination or modification even though all the beneficiaries desire that there should be, the purpose of the settlor in establishing the trust not having been fully accomplished. The amount of principal involved was small and the court below allowed payments therefrom. The Supreme Court reversed this decision, holding (page 337) that:

"The cases are adamant in holding that where the life interest is limited by a spendthrift provision the trust cannot be terminated by the court."

Chief Justice Stern quoted Morgan's Estate (No. 1), 223 Pa. 228, 230, 231:

"We repeat, spendthrift trusts are allowed not because the law concerns itself for the donee; he may conserve or dissipate as he pleases; the law's only concern is to give effect to the will of the donor as he has expressed it."

Citing Heyl Estate, 352 Pa. 407, 411, and Borsch Estate, 362 Pa. 581, 587, 588. However, significantly the opinion then reads (Bosler Estate, supra, page 339):

"While the order made by the court below is undoubtedly well intentioned for the purpose of affording some relief to the petitioner's anxieties, it constitutes a modification of the terms of the trust that cannot, in the absence of statutory authorization, be sustained."

There follows a note referring to the Estates Act of April 24, 1947, P. L. 100, section 2(a), as not being retroactive and, of course, not applicable to the case. In the instant case, the will was probated in 1949. Hence, the relief granted by the legislature is available. It is noted that the Act of February 17, 1956, P. L. 1073, 1074, added the phrase, "heretofore or hereafter created," to the language of the original section. The question of possible unconstitutionality of this provision is ruled out in the instant case as the trust herein involved was created subsequent to the 1947 enactment and so the question as to the retroactive effect of the amendment is not before us.

In Cannistra Estate, 384 Pa. 605 (1956), the Supreme Court denied relief where a complete termination of the trust was sought. There the two life tenants, the nephew and niece of testator, were entitled to receive income until the niece attained the age of 30 years, at which time $5,000 of the principal was to be paid over to her and $25,000 was to be paid to the nephew. The payments of income and principal were to be varied in the event of the death of the niece before reaching the age of 30 years, or in the event of the

nephew dying during the lifetime of the niece. The court stated that "Under such circumstances the nephew's interest in one-half of the income and in $25,000. principal was vested subject to be divested, and the niece's interest in said income and principal was contingent": Page 610.

Mr. Justice Bell said that the trust was unusual because the amounts of income and principal the life tenants were to receive depended upon and varied with different contingencies. Further, testator's dominant paramount intent was to place his entire residuary estate in an active trust until the niece attained, or would, if living, have attained the age of 30 years, and during that period income was to be paid to the life tenants equally in some cases and unequally in others. Granting the prayers of the petition would defeat the clearly expressed, wise intention of the testator. The niece needed the protection of the court in order to receive "(a) the safeguarding which the testator wished her to have during the years of her financial immaturity, and (b) the amount of both income and principal which the testator clearly and specifically willed to her in the event that the nephew died in her lifetime before reaching 30 years of age": Page 618.

This is not the case before us, where there is but one life tenant, the husband that testatrix made provision for until he died.

In Curry Appeal, 390 Pa. 105 (1957), relief was denied because all of the parties in interest were not given notice as required by the Estates Act of April 24, 1947, under which the petition was filed, and there was no evidence that the partial termination of the trust more nearly approximated the intention of the conveyor. Involved was an irrevocable inter vivos trust with a corpus of $50,000 set up in 1950 and providing for income payments to the settlor for life and there-

after to his children until the youngest reached 21, when the principal was to be distributed to the children per stirpes. The court found that the settlor had unaccountably dissipated over $50,000 paid to him in 1950, and that the continuation of the trust assuring the settlor of perpetual income was well advised as the evidence tended to demonstrate the continued need of the trust.

In Africa Estate, 359 Pa. 567 (1948), the Supreme Court affirmed the decree of the lower court in refusing to terminate a trust established prior to the enactment of section 2(a) of the Estates Act of April 24, 1947, on the ground that all of the persons who were presently or might thereafter be interested could not then be ascertained and joined.

In Borsch Estate, 362 Pa. 581 (1949), the court refused to terminate trusts created many years before the enactment of the Act of May 28, 1943, P. L. 797, as amended, it being the precursor of section 2(a) of the 1947 Act. The act was not retroactive and furthermore the life tenant had received income from a trust for over 25 years. Now, however, she sought to renounce and disclaim her life interest in the spendthrift trusts in order to vest a fee simple and absolute title in her son, the remainderman. The court held that spendthrift trusts are sustained not because of the law's concern for the donee but because the donor or testator possesses an individual right of property in the execution of the trust.

These cases are not controlling of the issue before us.

The exceptant, in contending that the trust cannot be terminated unless all beneficiaries of the trust consent, cites Cannistra Estate, supra, for the proposition that the law is as set forth in the Restatement of Trusts 2d §340(g), reading:

"If one or more of the beneficiaries of a trust do not consent to its termination or are not ascertained or

are under an incapacity, the others cannot compel the partial termination of the trust, if the interests of the non-consenting beneficiaries may be prejudiced thereby."

We find nothing in Cannistra Estate that imposes such restrictions on the effectiveness of section 2(a) of the Estates Act of April 24, 1947.

Nor is there validity in exceptant's complaint that the life tenant is estopped from petitioning for partial termination because he has been receiving the net income from the trust for over 10 years, he having elected to take under his wife's will. Grote Trust, 390 Pa. 261 (1957), which concerned a trust established in 1917, is not apposite. There the court prevented a life tenant from releasing his share of the income which he had been receiving for 23 years as part of a scheme to accelerate remainder interests where the effect of such acceleration would be to defeat the clear provisions of the trust and the rights of beneficiaries having a contingent interest in the remainder.

Here we have a life tenant who releases nothing; he seeks additional relief as a continuing life tenant. Were the court to consider the acceptance of income by a life tenant prior to filing his petition for relief under the Estates Act of April 24, 1947, as an estoppel to the seeking of relief the enactment would be a futility. Where a will becomes operational after the effective date of the 1947 Estates Act, the provisions of the will are subject to the application of the act where the court finds those conditions to exist which the act designates as prerequisities to the granting of relief.

Here the learned auditing judge very properly found that testatrix' intention was primarily to provide exclusively for her husband's support and maintenance during his life. Nothing could be more natural. There were no children to provide for. Provision for the proper support and maintenance of the person closest

and dearest to the testatrix at her death, her consort for over 40 years, was unquestionably the primary purpose of testatrix.

Very properly, too, the learned auditing judge found that it would be unreasonable to believe that testatrix intended principal to be saved for the benefit of her sister, her nephew, and the unborn issue of her nephew, regardless of the needs of her husband in his old age. And now that the sister is dead, it is even more unreasonable to assume that testatrix would prefer that the husband of that sister, her husband for only the final year of her life and a stranger to decedent, should profit while testatrix' own husband suffered the loss of comfort and adequate support in his last years.

True, testatrix could have provided in her will for payments out of principal at the discretion of her trustee. That she neglected, and that others creating trusts will neglect so to do, gave cause for the Estates Act of April 24, 1947. In fact, the instant case appears to provide the precise situation, crying for relief, that the draftsmen of the act envisaged.

From the facts of this case it is apparent that there was ample justification for the conclusion of the learned auditing judge that the trust has failed of its purpose in providing for the reasonable needs of the life tenant, and that insufficiency of income has frustrated testatrix' intention. Consequently, within the terms of the act, the original purpose of testatrix cannot be carried out. It is impossible of fulfillment. The grant of an award of a partial termination or allowance out of principal, as more nearly approximating the intention of the conveyor, was a wise exercise of the discretion of the auditing judge under the authority of the Estates Act of April 24, 1947.

Exceptant also alleged error in the ruling that all claims with respect to tangible personal property, of

which Mr. Ryan had only the use and not the right of disposition, must await the termination of the life estate when they may be presented against the life tenant's estate. This was not pressed at argument and it is not here reviewed.

We accordingly dismiss the exceptions and confirm that adjudication absolutely, subject to the amendment thereto that the payment allowed out of principal be limited to the total amount of $25,000, as provided in the Estates Act of 1947.