## Matthews Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Ballard, Spahr, Andrews & Ingersoll,* for exceptants.

*Donald S. Cohan,* trustee ad litem, contra.

LEFEVER, J., November 9, 1962.—May life-tenant and remaindermen terminate a spendthrift testamentary trust by the life-tenant releasing and disclaiming income from the trust in favor of the remaindermen pursuant to section 3 (a) of the Estates Act of April 24, 1947, P. L. 100, as amended, and the remaindermen agreeing to divide the principal with life-tenant? This is the issue raised by the exceptions before us.

Testatrix died on September 18, 1944. By her will she gave the residue of her estate in spendthrift trust to pay the net income therefrom to her son, Caldwell F. Matthews, for life and upon his death to pay the net income to his daughters, Hillaire J. Matthews (now Wister) and Marcia L. Matthews (now Snyder), until the younger of them reached 30 years of age and at that time to pay the principal to them, equally. There were gifts over in the event of the failure of one or both of testatrix' granddaughters to attain the age of 30. There was no provision in the event that both granddaughters reached the age of 30 prior to the termination of the life estate.

Life-tenant and his two daughters are still living. Both daughters have attained the age of 30. The trustee died on January 15, 1961, and his first account has been filed by the executrix of his estate.

On January 30, 1962, life-tenant and the two remaindermen entered into a release and assignment agreement whereby life-tenant released "all his right, title

and interest in and to the income from the trust created under Item Fifth of the Will of Edna F. Matthews, deceased," and each remainderman assigned to life-tenant "one-third of her share of the principal of the trust" created thereunder. The parties agreed further: "This Release and Assignment shall be of no effect if the Orphans' Court of Philadelphia . . . declines at said audit to direct termination of the trust and distribution of the assets among the parties hereto."

Exceptants contended that under section 3 (a) of the Estates Act of 1947, as amended, the foregoing release and assignment constituted a termination of the trust. Accordingly, they requested the auditing judge to award the corpus of the trust, having an account value of $42,733.86 and a market value of $69,876.14, to the life-tenant and to the two remaindermen pursuant to the terms of said agreement, namely, in equal thirds, absolutely.

The learned auditing judge filed an adjudication in which he refused to terminate the trust and to make the requested awards. Exceptions thereto are now before us.

Section 3 (a) of the Estates Act of 1947, as amended by the Act of February 17, 1956, P. L. (1955) 1073, provides:

"Any power of appointment, or power of consumption, whether general or special, other than a power in trust which is imperative, and any interest in, to, or over real or personal property held or owned outright, or in trust, or in any other manner which is reserved or given to any person by deed, will or otherwise, and irrespective of any limitation of such power or interest by virtue of any restriction in the nature of a so-called spendthrift trust provision, or similar provision, may be released or disclaimed either with or without consideration, by written instrument signed by the per-

son possessing the power or the interest and delivered as hereinafter provided, but nothing in this section shall authorize an income beneficiary as a spendthrift trust to release or disclaim his right to such income, unless *as a result of the release or disclaimer the released or disclaimed income will pass to one or more of the beneficiary's descendants.*"

(The italicized portion constitutes the 1956 amendment.)

To interpret the meaning of this statute and apply it to the facts in the instant case requires (a) ascertainment of the intention of the legislature in framing the statute and (b) analysis of the language of the statute.

Pursuant to Senate Resolution No. 46 of 1945, the Joint State Government Commission was directed to "study, revise and prepare for reenactment the Orphans' Court Partition Act, the Orphans' Court Act, the Revised Price Act, the Wills Act, the Register of Wills Act, the Intestate Act and the Fiduciaries Act, together with all of their supplements and amendments and all separate laws that should properly be incorporated therein, and to present them for the consideration of the General Assembly . . ." The Commission eventually drafted revisions of all of the above mentioned acts. In addition, it drafted the Estates Act of 1947, which was a "catch-all" of statutory provisions which did not properly fit into the other acts. This is apparent from the title, viz.:

"An Act relating to the incidents of legal and equitable interests in real and personal property, including the validity thereof, the powers, rights, and duties of persons with respect thereto, and the disposition of interests which fail, and containing provisions concerning *termination of trusts, releases and disclaimers of powers and interests,* perpetuities, accumulations, charitable estates, rights of a surviving spouse in property as to which the decedent has retained cer-

tain powers, spendthrift trusts, limited estates in property, rules of interpretation, estates pur auter vie, estates in fee tail, and the Rule in Shelley's Case." (Italics supplied.)

Section 2 of the Estates Act deals solely with termination of trusts. It provides:

"(a) Failure of Original Purpose. The court having jurisdiction of a trust, *heretofore or hereafter created*,[1] regardless of any spendthrift or similar provision therein, in its discretion may terminate such trust in whole or in part, or make an allowance from principal to a conveyor, his spouse, issue, parents, or any of them, who is an income beneficiary, provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor, and notice is given to all parties in interest or to their duly appointed fiduciaries. But, distribution of principal under this section, whether by termination, partial termination, or allowance, shall not exceed an aggregate value of twenty-five thousand dollars from all trusts created by the same conveyor.

"COMMENT—Termination of trusts, which have failed in their purpose and which have become oppressive or otherwise undesirable, has been impossible in numerous instances due to inability to secure the consent of persons unborn, unascertained, or not *sui juris*. The purpose of this section is to give relief in such cases, but only as to trusts created after the effective date of the act. The relief to be given is in the nature of cy pres, thus preventing a complete frustration of the conveyor's intention . . .

"A provision for the termination of trusts without the consent of all parties in interest is inspired by

---

[1] The words in italics were added by the 1956 Amendment.

similar legislation in several other states including California, Texas, Oklahoma, North Carolina and New York. The allowance from principal for maintenance of the income beneficiary has its analogy in the allowance from income of a spendthrift trust, as authorized in section 12 of this act, 20 P.S. §301. 12.

" 'regardless of any spendthrift or similar provision therein' is included to eliminate any doubt about the effect of such a provision on the right of termination. Cf. Rehr v. Fidelity-Phila. Trust Co., 310 Pa. 301; Bowers' Trust Est., 346 Pa. 85; Rehr v. Fidelity-Phila. Trust Co., 37 D. & C. 324.' "

As appears from the foregoing comment of the Joint State Government Commission[2] and the stormy history of the Estates Act of 1947, the Commission and the legislature were moved by the pathetic state of beneficiaries in countless trusts, large and small, spendthrift or not, during the disastrous financial depression of the 1930's where no power to consume principal was vested in the trustees. Accordingly, section 2 empowered the court to terminate such a trust in whole or in part to a maximum amount of $25,000 where such hardship was suffered by the beneficiary as to enable the court to make a determination that the purposes of testator or settlor had failed.

This is vastly different from the request in the instant case for termination of a testamentary spendthrift trust pursuant to agreement of a life-tenant and his two remaindermen daughters solely because they find it more desirable to gain possession of the trust principal of approximately $70,000, even though there has been no showing of hardship nor of failure of purpose.

---

[2] The comments of the Commission which drafted the act are properly taken into consideration by the court in construing that act: See Martin Estate, 365 Pa. 280, 283; see Verner Estate, 358 Pa. 280, 293.

It is noteworthy that section 2 of the Estates Act is entitled "Termination of Trusts." In contrast, section 3 of the same act is entitled "Release or Disclaimer of Powers or Interest." It is a well known canon of statutory construction that a statute is to be interpreted in the light of its title. The arrangement and content of the various sections are also germane. If the legislature had intended to authorize the court to terminate trusts in cases such as the instant one, it is only logical that this much broader power to terminate would have been included in "Termination of Trusts", section 2.

The history and purpose of section 3 are revealing. They appear in the Comment. It follows.

"COMMENT—Subsections (a), (b), and (c) are similar to sections 1, 2 and 3 of the Act of 1943, P.L. 797, as amended by the Act of 1945, P.L. 1337, 68 PS, et seq.

"An effort has been made to preserve the tax advantages which led to the amendments of 1945 and at the same time to eliminate certain collateral questions which have been raised by those amendments.

"The Act of 1943 was prompted by a change in the Federal tax laws by the Revenue Act of 1942. A complete or partial release or disclaimer of a power of appointment or other property right is now often desirable. The purpose of the Act of 1943 was to establish an orderly method by which the releases, partial releases and disclaimers could be evidenced.

"The 1945 amendment went much further than the original act. The amendments were intended to make it possible for life beneficiaries to disclaim interests in favor of charitable remaindermen before the due date for filing the Federal estate tax return, and in this manner secure full deductions for the charitable gifts in such tax returns. See Section 812(d) of the Internal Revenue Code as amended by the Revenue

Act of 1942. As now amended it is possible for the life beneficiary to relinquish his right to consume principal or to receive principal in the discretion of the trustee, and thus secure deduction for the charitable gift. See Schoonmaker Est., 6 T. C. 404.

"The subsection preserves the right to relinquish rights in principal which otherwise might make the principal taxable or prevent the deduction of a gift to a charitable remainderman. It does not continue the right to release or disclaim the income of a spendthrift trust. In thus avoiding the possibility of defeating the conveyor's plans, it also avoids difficult questions concerning acceleration of remainders: Cf. Disston's Est., 257 Pa. 537; Gunning's Est., 234 Pa. 144.

"COMMENT — 1956 amendment — This amendment gives Pennsylvania residents a greater latitude in making their estate plans and avoiding unnecessary federal taxes without losing the protection the conveyor intended to provide for the beneficiaries and their families."

In summary, the framers of the Estates Act of 1947 incorporated the substances of the 1943 Act, as amended, into section 3 because (1) it was within the orbit of the Estates Act; and (2) they wished to make certain to preserve for settlors, life-tenants, holders of powers of appointment and remaindermen and others the right to release or disclaim interests in trusts which carried with them the burden of heavy Federal taxes, notwithstanding the fact that the trusts contained spendthrift provisions.

It would be a perversion of the intent and the language of the draftsmen to construe section 3 as requested in the instant case. To do so would open the door to the termination of *all* trusts, spendthrift or not, with principal in meager or very large amounts, where the life-tenant and remainderman are named and interests are vested. In such cases, the agreeing parties,

by whimsy or caprice, could circumvent the carefully considered and well laid plan of testator or settlor to dispose of his property. The obligation of the courts to make certain that testator's wishes are carried out is firmly intrenched in Pennsylvania (notwithstanding the decisions of other states and opinions of text writers to the contrary cited by exceptants). The Pennsylvania view is forcefully stated by the Supreme Court, through Mr. Justice Allen M. Sterne, in Borsch Estate, 362 Pa. 581, 586:

". . . The basis for this doctrine rested upon the ancient maxim: *Cujus est dare, ejus est disponere:* The bestower of a gift has the right to regulate its disposal. Spendthrift trusts are sustained not because of the law's concern for the donee, but because the testator or donor possessed an individual right of property in the execution of the trust. *To permit a termination by agreement or release would be an invasion of the donor's property right.*

"The doctrine of the enforceability of spendthrift trusts has been criticised in opinions in other states and by text book writers. The dissenting opinion in the court below cites a statement of Griswold, in his book, 'Spendthrift Trusts': 'And the settlor cannot be invalidly deprived of property of which he is no longer owner, especially in the usual case where he is dead when the issue arises.' The learned dissenting judge also says: 'The testator has no interest in the property after his death, which is subject to constitutional protection.' True, there are no pockets in shrouds. The Constitution, however, is *not* protecting *present* ownership of property *of a decedent.* What it does protect is the property right possessed by the testator or donor, *to have enforced the limitations and restrictions affixed to the gift.*

"As early as 1838 in Holdship v. Patterson, 7 Watts 547, Chief Justice Gibson said, p. 551: '. . . a bene-

factor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. *He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to a purpose or person not intended, would be an invasion of the donor's private dominion.'* " (Italics by Supreme Court.)

See also the many cases cited and quoted in Borsch Estate, supra. To the same effect see Bosler Estate, 378 Pa. 333, 338.

Finally, the language of section 3, as amended in 1956, is not applicable to the instant case. That language is: ". . . nothing in this section shall authorize an income beneficiary of a spendthrift trust to release or disclaim his right to such income, *unless as a result of the release or disclaimer the released or disclaimed income will pass to one or more of the beneficiary's descendants."*

In the instant case, the entire income from the trust which life-tenant endeavored to release and disclaim by the agreement between him and the remaindermen does not all go to his descendants. *Per contra,* each of them has assigned one-third of her share of principal, with the right to receive the income therefrom, to the life-tenant. Therefore, the remaindermen hereafter will receive only two-thirds of the income from the trust. Moreover, despite the fact that the will gives him no right to receive principal, the life-tenant will receive one-third of the trust corpus. Exceptants argue in their brief that "The legal effect of the release *is* to pass the income to the beneficiary's descendants who may thereafter dispose of it and the principal from which it is derived as they wish." In short, by this agreement the parties may thwart testatrix' intent that life-tenant receive only income, and remaindermen receive income and then principal upon the occurrence

of an event, viz: "the death of my son." Therein lies the vice of their position.

Moreover, even though the language of section 3 be held to authorize the life-tenant's assignment and release of his income to the remaindermen, nothing in the section or law accelerates the remainders. In Borsch Estate, 362 Pa. 581, the court stated at page 589, et seq.:

". . . Even though the life tenant, the spendthrift beneficiary, refuses to accept income, this constitutes no valid reason for terminating the trust. While the life tenant may *presently* decline the spendthrift income (which in the interim may be distributed to others under the terms of the will or by law), it may subsequently develop that the creator of the trust was wiser than the beneficiary who may thereafter desire to repudiate her release and renunciation and receive *future* income. See Heyl Estate, 352 Pa. 407, 409, 43 A. 2d 130. It is a subterfuge, thinly veiled, to permit a life tenant under a spendthrift clause to release and disclaim her interest, thus accelerating the remainder, and then to permit the remainderman to terminate the trust. This is allowing, by indirection, that which this Court has consistently forbidden to be done directly. . . ."

In Grote Trust, 390 Pa. 261, the court, speaking per Mr. Justice (now Chief Justice) Bell, stated at page 270, et seq.:

"However, the lower Court was in error in holding that Ludwig's sale of his right to future spendthrift trust income created an acceleration of the remainder interests and justified the termination of the Trust Estate." . . .

"In Borsch Estate . . . The Court, speaking through Justice Allen M. Stearne, held . . . (b) that the refusal of a spendthrift trust income beneficiary to receive the income—*after accepting the gift*—*does not*

*permit the parties or a Court to terminate the trust or accelerate the remainder."*

In summary, the above cited cases indicate that the life-tenant's assignment of income may be valid under section 3 of the Estates Act of 1947, but it does not accelerate the right to receive the remainder. Therefore, exceptants are not entitled to receive the relief requested, even assuming *arguendo* that section 3 contains authority to this court to terminate a trust in the manner they request.

In view of the conclusions reached, we deem it unnecessary to discuss or decide the constitutionality of the amended section 3, if applied retroactively.

We unhesitatingly agree with the refusal of the learned auditing judge "to direct termination of the trust and distribution of the assets among the parties." It follows that the agreement between life-tenant and the remaindermen is now ineffectual.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.