## Grote Trust.

Argued March 29, 1957. Before JONES, C. J., BELL, ·CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused November 8, 1957.

*Frank W. Ittel,* with him *Joseph I. Marshall, Robbin B. Wolf, Arthur Edwin Uber, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellants.

*Ella Graubart,* with her *Dorothy Grote Voss,* and *Patterson, Crawford, Arensberg & Dunn,* for appellees.

OPINION BY MR. JUSTICE BELL, September 30, 1957:

Conrad H. Grote and his wife, Auguste Grote, executed a Trust Indenture on October 29, 1917, in which they conveyed to their sons, Hermann L. Grote, Ludwig I. Grote and Frederick C. Grote, as Trustees, 19 parcels of real estate in Allegheny County, described therein, for the persons and purposes set forth in the Trust Indenture. Conrad H. Grote died April 24, 1929, and his wife, Auguste Grote, died February 4, 1939.

Hermann L. Grote, one of the Trustees and beneficiaries of the Trust, died August 12, 1940, leaving to survive him two children—Esther Augusta Grote Siegert, for whom a guardian was appointed in the early part of 1952, and Meta Christine Grote Uber. Mrs. Uber has a minor child two years of age. Frederick C. Grote, the surviving Trustee and one of the beneficiaries of the Trust, died May 29, 1954, leaving to survive him a child, Dorothy Kathryn Grote Voss. Mrs. Voss has a minor child. Ludwig I. Grote is still living, but resigned as Trustee March 12, 1940. He is an old and childless man.

The Executors of the will of Frederick C. Grote filed on December 21, 1954 an exceptionally sketchy summary which they denominated "First and Final Account of Frederick C. Grote, Surviving Trustee, Under Deed of Trust Dated October 29, 1917". This account purportedly covered principal transactions for 37 years. It debited the Trustees with the 19 parcels of real estate set forth in the original Trust Indenture dated October 29, 1917, and carried for accounting purposes at $1.00 each. It then debited the Trustees with the "sale or other disposition of real estate" of 17 of the original 19 pieces of real estate, giving only the net proceeds of sale of each, which in many instances was for a consideration of $1.00.. The account also showed

total income, receipts and disbursements for January, February, March and April of 1954. The account showed a balance for distribution consisting of *two parcels of principal, realty,* which at the audit were valued at over $250,000. No account of this Trust Estate had ever been previously filed, and all or nearly all of the records and books pertaining to the administration of the Trust have been lost or destroyed.

The Potter Bank and Trust Company, which was appointed Successor Trustee on June 14, 1954, filed a large number of exceptions to the account, which were joined in by the daughters of Hermann L. Grote notwithstanding the fact that their father would be equally liable with the accountant, their uncle Frederick, for any mismanagement of the Trust up to the time of his death on August 12, 1940, and notwithstanding releases and waivers which they executed and which will be hereinafter referred to. The objections of the exceptants included a demand for a detailed accounting of the Trust assets, receipts, disbursements, sales, mortgage transactions and proceeds of sales of real estate and of personal property from the inception of the Trust in 1917.

The Trustees were given by the Trust Indenture broad powers to sell, lease, mortgage and convey the real estate, and were likewise given broad powers with respect to a reinvestment of the proceeds of sale "in real or personal property, stocks, bonds, mortgages, and other securities as they deem reasonably safe". The Indenture also contained a strict spendthrift trust provision as to both principal and income.

The Grotes were a very close family. Hermann and Frederick Grote were closer and more inseparable than almost any other pair of brothers. Goldie Grote, widow of Hermann Grote and mother of Meta Grote Uber and

Esther Grote Siegert, the individual exceptants, had been the agent for Frederick Grote, the Surviving Trustee, of the (remaining) valuable Swissvale property since 1932—8 years prior to Hermann Grote's death. The Trustees' use of part of the income for the improvement of the Swissvale Borough property served to increase its value to its present appraised value of $245,000. No averment of fraud in the management of the Trust property or in the conduct of any of the affairs of the Trust has been made by any one; nor was any demand for an accounting ever made by any beneficiary until shortly before the present account was filed. Since 1940 the two individual exceptants, Meta Christine Grote Uber and Esther Augusta Grote Siegert, who are daughters of Hermann Grote, have been of age and have acquiesced in the management of the Trust by their Uncle Frederick without raising any question or objection. They also signed the agreement of September 28, 1943 and the waivers and releases which will be hereinafter discussed.

Ludwig I. Grote, as Trustee and beneficiary, executed on March 12, 1940 a Power of Appointment which was given him in the 1917 Trust Indenture, and appointed "that part of the Income or the Trust property which I would be entitled to receive if living" to his two brothers Hermann and Frederick, in consideration of the conveyance to Ludwig and his wife of three valuable properties in Florida which are described in said instrument. Simultaneously, Ludwig and his wife executed a "Deed of Release and Quit-Claim and Assignment of Income" which again recited, as consideration therefor, the conveyance to them by Hermann and Frederick Grote of the Florida real estate, and in consideration thereof quit claimed and sold to Hermann

and Frederick all of Ludwig's net income to which he would be entitled under the 1917 Indenture of Trust. Thereafter, viz. after March 12, 1949, one-half of the income of the spendthrift trust was paid to Frederick C. Grote until his death on May 29, 1954, and the other one-half of the income was paid to Hermann L. Grote until his death on August 12, 1940, and thereafter in equal shares to his daughters, Meta Christine Grote Uber and Esther Augusta Grote Siegert.

On September 28, 1943, Frederick C. Grote, individually and as surviving trustee, and his daughter, Dorothy K. Grote Voss [denominated remainderman], Meta Christine Grote (now Uber) [denominated remainderman] and Esther Augusta Grote (now Siegert) [denominated remainderman], (daughters of Hermann) and Goldie G. Grote, Executrix under the will of Hermann L. Grote, entered into a lengthy family agreement under seal, in which they pertinently agreed, inter alia, as follows:

"1. *To waive** any and all duty or liability of the surviving Trustee, Frederick C. Grote, the resigned Trustee, Ludwig I. Grote, or the deceased Trustee, Hermann L. Grote, or the heirs, executors, administrators, successors or assigns of them or any of them—to *account* for or to file in the proper tribunal *any account of the administration of the Trust Estate covering the period from October 29, 1917 to August 12, 1940.*

"2. *To ratify and confirm each and every act of the Trustees, and each of them, in the administration of said Trust Estate from October 29, 1917 to August 12, 1940, and to release said Trustees and each of them,* their heirs, executors, administrators, successors and assigns, from any and all claims, debts, dues and de-

---

* Italics throughout, ours.

mands, other than for money advanced as hereinbefore provided in paragraph 4 (infra), arising out of the administration of said Trust Estate, during the period hereinbefore set forth." . . .

"7. To authorize and direct the surviving Trustee, his successors and assigns, to establish *August 12, 1940* as the starting date for any and all future accounting to be required of him, his successors or assigns, by the law and the Rules of Court or at the request of any party in interest, *as though the Trust Deed had been dated August 12, 1940 and the administration of the Trust had been begun on that date.*"

This release executed on September 28, 1943 by Frederick C. Grote and his daughter, Dorothy K. Grote Voss, Meta Christine Grote Uber and Esther Augusta Grote Siegert and Goldie G. Grote, Executrix of the Will of Hermann L. Grote, constituted by its express terms a waiver of any account of the administration of the Trust Estate from October 29, 1917 to August 12, 1940, and a ratification and release of every act of the Trustees and each of them in the administration of said Trust Estate for the said period. This waiver, ratification and release conclusively bars the individual exceptants from any and all claims for further accounting or for surcharge as to principal and income arising out of the administration of said Trust Estate from October 29, 1917 to August 12, 1940.

The same parties, with the exception of Goldie G. Grote, executed under seal an agreement on the 29th day of October 1943, approving an informal accounting of Goldie G. Grote as Agent for the Swissvale properties from August 12, 1940 to December 31, 1942, and releasing her from any further accounting for said period.

The same parties executed a release and waiver commencing in 1944 to 1953 inclusive, in which they* acknowledged under a seal a full and complete accounting by Frederick C. Grote, Surviving Trustee, for each of the prior years, and approved the informal accounting, waived the filing of a formal account in Court and *released* the Trustee from all duty to account for the monies received during the years in question, with certain irrelevant exceptions.

The individual exceptants are likewise barred, by the aforesaid waivers and releases they signed, from all claims for surcharge against Frederick C. Grote, Surviving Trustee, for the years 1940 to 1950 inclusive. The individual exceptants, excluding Esther Grote Siegert, an incompetent, are likewise barred by similar waivers and releases from all claims against the Trust Estate for the years 1951 and 1952; and for said period of time Esther Grote Siegert and all individual appellants are barred for the year 1954 by laches.

To summarize: all the individual claimants (grandchildren) are barred from all claims for further accounting and for surcharge by estoppel,** waiver*** and laches; the successor trustee is barred by laches. Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a

---

* In one year one of the beneficiaries omitted to sign the instrument. Esther Grote Siegert last signed a release and waiver for the year 1950.

** *Ervin v. Pittsburgh*, 339 Pa. 241, 14 A. 2d 297; *Fedas v. Insurance Co. of the State of Penna.*, 300 Pa. 555, 151 A. 285; *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 27 A. 2d 20.

*** *Cole v. Phila. Co.*, 345 Pa. 315, 26 A. 2d 920; *Atlantic Refining Co. v. Wyoming National Bank*, 356 Pa. 226, 51 A. 2d 719.

claim against him. Cf. *Hammond v. Hopkins,* 143 U.S. 224; *Barnes and Tucker Co. v. Bird Coal Co.,* 334 Pa. 324, 5 A. 2d 146; 19 Am. Jur. §§498, 511; 30 C.J.S. §§112, 115, 119; *Paull v. Paull,* 384 Pa. 2, 119 A. 2d 93; *First National Bank of Pittston v. Lytle Coal Co.,* 332 Pa. 394, 3 A. 2d 350.

For the reasons above stated, the exceptions and claims for surcharges were properly dismissed by the lower Court.

However, the lower Court was in error in holding that Ludwig's sale of his right to future spendthrift trust income created an acceleration of the remainder interests and justified a termination of the Trust Estate.

The Trust Indenture provided for the payment of $3,000 a year to each of the settlors so long as he or she lived, *the balance of income* to be paid annually, under (very restrictive) spendthrift trust provisions, to their three sons equally. Upon the death of both parents, all of the income was to be divided equally among their three sons. The Indenture further provided that when a son died, his children or grandchildren were to receive his share of the income, but if he left no children or grandchildren he could appoint *his share of the income* (by deed under seal and duly acknowledged) to any one whom he wished. The Indenture further provided:

*"Upon the death of the last survivor* of our three sons and the death of both grantors, the principal of this trust, . . . shall go *to such of the sons and daughters of our three sons named as may then be living,* . . . *and to the children then living* of any who may be deceased, share and share alike *per capita* and not per stirpes, their heirs and assigns, forever; and the trust hereby created shall thereupon cease and determine, . . . ."

It is important to note that the settlors clearly and specifically named the beneficiaries who were to take the principal, namely, such of the children of their three sons as may be living at the death of the last survivor of their three sons, and the then living children of any who may be deceased. This was clearly and indisputably a contingent gift; and neither the class nor the beneficiaries who are entitled to take the principal under the clearly expressed terms of the trust, can be eliminated or changed.

It is important to note that Ludwig never renounced the spendthrift trust income which was given him by the Trust Indenture of 1917 as he had a legal right to do: *Bute Estate,* 355 Pa. 170, 49 A. 2d 339; on the contrary, the claimants themselves have stipulated by agreement under seal dated September 28, 1943 (Exhibit 3) that Ludwig and his co-beneficiaries, Hermann and Frederick, had received from the Trust Estate on account of their interest as tenants for life certain sums (of income) in about equal amount. What happened was that each of these life beneficiaries received *until March 12, 1940* their share of the net income, after part of the net income had been paid for carrying charges, taxes and improvements to the Swissvale and perhaps other properties. Furthermore, Ludwig never even renounced in 1940 his share of future trust income; on the contrary, *he sold* his share of income for three Florida properties. Equally important, each of the children of Hermann Grote and of Frederick Grote, and the possible children if any (which is very doubtful) of Ludwig Grote has, under the clearly expressed terms of the Trust Indenture of 1917, *only a contingent interest* in the remainder—contingent upon each living at the death of the last survivor of (the settlors and of) settlors' three sons. Moreover,

each of the settlor's *great*-grandchildren—Mrs. Voss and Mrs. Uber each have a minor child living—has a contingent per capita interest in the remainder, which becomes vested if their respective parent dies before Ludwig. The rights of the *great*-grandchildren which were clearly and specifically given them in the Trust Indenture of 1917 cannot possibly be extinguished or altered by Ludwig's sale in 1940 of his share of future spendthrift trust income: *Borsch Estate,* 362 Pa. 581, 67 A. 2d 119; *Bosler Estate,* 378 Pa. 333, 107 A. 2d 443; *Cannistra Estate,* 384 Pa. 605, 121 A. 2d 157.

*Borsch Estate,* 362 Pa., supra, is factually on all fours with the instant case, and that decision and the principles enunciated and reiterated therein rule the instant case adversely to the claim of the appellees.*

In *Borsch Estate* the life tenant, after receiving the income on two trusts for many years, executed a release to the trustees wherein she *renounced, disclaimed and released* her life interests in the spendthrift trusts, intending thereby to terminate them and *vest by acceleration* a fee simple title in the real estate *in her son* who, under the terms of the trusts, was *the remainderman.* Even though the release was in favor of her son and upon her death he would (under the terms of the trust) inherit the corpus, this Court held that the renunciation and release (1) was invalid and (2) could not accelerate the remainder—even though the Act of May 28, 1943, P. L. 797, as amended by the Act of June 1, 1945, P. L. 1337, 68 PS 581 et seq., authorized such a release. That Act (which has since been changed and restricted) provided, inter alia, in §2 that no pow-

---

* These claimants in a short time will, if living, receive in accordance with the clear terms of the Trust Indenture and the well settled authorities, the principal which the lower Court attempted to give them today.

er or interest, subject to a spendthrift trust provision, or similar provision, may be released or disclaimed *except in favor of a remainderman.* The Act further provided, in §4, that "This act shall apply to releases and disclaimers *heretofore* and hereafter delivered." The Court, speaking through Justice ALLEN M. STEARNE, held (a) that the portions of the Act of 1943 as amended, which applied to existing spendthrift trusts, was unconstitutional; and (b) that the refusal of a spendthrift trust income beneficiary to receive the income—*after accepting the gift—does not permit the parties or a Court to terminate the trust or accelerate the remainder.** The reasons for the Court's decision and the language and rationale of its opinion is particularly pertinent and controlling: ". . . When, prior to the Act, a beneficiary of income subject to spendthrift trust provisions accepted the gift, *this Court consistently held* that the beneficiary could not thereafter terminate the trust by releasing, renouncing and disclaiming his interest. The basis for this doctrine rested upon the ancient maxim: *Cujus est dare, ejus est disponere*: The bestower of a gift has the right to regulate its disposal. *Spendthrift trusts are sustained* not because of the law's concern for the donee, but *because the testator or donor possessed an individual right of property in the execution of the trust. To permit a termination by agreement or release would be an invasion of the donor's property right.* . . .

"As early as 1838 in Holdship v. Patterson, 7 Watts 547, Chief Justice GIBSON said, p. 551: '. . . a bene-

---

* Appellees have further overlooked the settled principle of law that the renunciation of the income from a spendthrift trust by a beneficiary may subsequently be repudiated by him: *Heyl Estate*, 352 Pa. 407, 43 A. 2d 130; *Keeler's Estate*, 334 Pa. 225, 3 A. 2d 413.

factor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to a purpose or person not intended, would be an invasion of the donor's private dominion.' . . .

"In Riverside Trust Company v. Twitchell et al., 342 Pa. 558, 20 A. 2d 768, Mr. Justice DREW said, p. 561: '. . . it was said, in Morgan's Estate (No. 1), 223 Pa. 228, 230: "The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of cujus est dare, ejus est disponere. It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship v. Patterson, 7 Watts, 547." See also Harrison's Estate, 322 Pa. 532, 533.' . . .

"Irrespective of the true nature of the testamentary direction (i.e., whether or not it constitutes a vested property right), it is, nevertheless, a testamentary direction which always heretofore has been enforced by this Court. We said, in Stoffel's Estate, 295 Pa. 248, 145 A. 70, p. 251: 'One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, *or improperly defeated by agreement between those upon whom he bestowed his bounty.* The law will not

permit that to be accomplished by indirection which cannot be done directly. . . .'

"As early as 1851 this Court said, in Ervine's Appeal, 16 Pa. 256, 265: 'A just government ought as emphatically to protect wills as deeds and contracts. Because, by so doing, not only the rights of the living are secured, but also the rights of the dead—rights which all civilized nations regard."

Appellees' contention likewise flies in the teeth of Legislative policy as exemplified in Acts passed subsequent to the decision in *Borsch Estate,* 362 Pa., supra. In 1956 the Legislature authorized the release of a power of appointment or interest but narrowly restricted the right by providing that ". . . nothing in this section shall authorize an income beneficiary of a spendthrift trust to release or disclaim his right to such income, unless as a result of the release or disclaimer the released or disclaimed income will pass to one or more of the beneficiary's descendants."* Even under this subsequent statute (which is of course here inapplicable), Ludwig's assignment and release of his share of the spendthrift trust income would be absolutely invalid and obviously utterly incapable of legally terminating his interest in the future income of the spendthrift trust, or of vesting the corpus by acceleration—contrary to the express terms of the Trust Indenture—in those grandchildren of settlors who were living at Frederick's death.

That this spendthrift trust cannot be terminated is further clearly and forcefully illustrated by the analogous case of *Bosler Estate,* 378 Pa., supra, which in principle likewise rules the instant case. In that case, the petitioner was one of three life beneficiaries of a

---

* Act of April 24, 1947, supra, as amended February 17, 1956, P. L. 1073, §3 (a), 20 PS 301.3.

testamentary spendthrift trust. According to the terms of the trust instrument, a share of the principal was to be paid to the issue of each deceased beneficiary who was living at her death; in default of any issue, each beneficiary was given a general power to appoint (a share of) the remainder by will. The petitioner was then 65 years of age and sought to terminate the trust on the ground that he had no issue, was incapable of having any issue, and that these facts coupled with his life estate and his general power of appointment amounted to an estate in fee and enabled him to terminate the trust. This Court rejected this contention and in dismissing the petition in a unanimous opinion by Chief Justice STERN, said (pages 336, 337, 339):

"The principles of equity jurisprudence applicable to petitions to terminate trusts have been so often defined by this Court as to render extended discussion of the subject wholly unnecessary. If all the parties who are or may be beneficially interested in a trust are in existence and sui juris, if there is no ultimate purpose of any kind requiring the continuance of the trust, and if all the beneficiaries consent, a court of equity may decree its termination: Culbertson's Appeal, 76 Pa. 145, 148; Harrar's Estate, 244 Pa. 542, 548, 549, 91 A. 503, 505; Stafford's Estate, 258 Pa. 595, 598, 599, 102 A. 222, 223; Wood's Estate, 261 Pa. 480, 483, 104 A. 673; Bowers' Trust Estate, 346 Pa. 85, 87, 29 A. 2d 519, 520.; Restatement, Trusts, §337. But if the purpose of the settlor in establishing the trust has not been fully accomplished, and if the settlor is deceased and therefore incapable of consenting, the trust cannot be terminated even though all the beneficiaries desire that it should be: Bowers' Trust Estate, 346 Pa. 85, 87, 88, 29 A. 2d 519, 520, and cases there cited.

"The cases are adamant in holding that where the life interest is limited by a spendthrift provision *the trust cannot be terminated by the court*: Dodson v. Ball, 60 Pa. 492, 496; Shower's Estate, 211 Pa. 297, 60 A. 789; Moser's Estate, 270 Pa. 217, 113 A. 199; Baughman's Estate, 281 Pa. 23, 39, 126 A. 58, 64; Rehr v. Fidelity-Philadelphia Trust Company, 310 Pa. 301, 304, 305, 165 A. 380, 381; Harrison's Estate, 322 Pa. 532, 185 A. 766; Bowers' Trust Estate, 346 Pa. 85, 88, 29 A. 2d 519, 520; Heyl Estate, 352 Pa. 407, 411, 43 A. 2d 130, 131, 132; Restatement, Trusts, §337, comment 1. . . . It was said in Morgan's Estate (No. 1), 223 Pa. 228, 230, 231, 72 A. 498, 499: 'It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property. . . . We repeat, spendthrift trusts are allowed not because the law concerns itself for the donee; he may conserve or dissipate as he pleases; the law's only concern is to give effect to the will of the donor as he has expressed it.' So also Heyl Estate, 352 Pa. 407, 411, 43 A. 2d 130, 131, 132; Borsch Estate, 362 Pa. 581, 587, 588, 67 A. 2d 119, 122."

*Cannistra Estate,* 384 Pa., supra, is another analogous case which in principle rules the instant case. Cannistra gave his residuary estate to his trustees in trust: ". . . to pay said income to my nephew, Anthony F. Cannistra, and my niece, Rosetta Cannistra, . . .

share and share alike. Said payments of income shall . . . continue until my said niece has attained the age of thirty (30) years, at which time the said trust shall terminate and my said trustee shall, from the corpus of said trust, pay to my said niece the sum of Five Thousand ($5,000.00) Dollars cash, and the entire balance of the corpus of said trust, . . . shall then be paid or turned over by my said trustee to my nephew, Anthony F. Cannistra, aforementioned, absolutely whereupon said trust shall terminate.

"In the event that my said niece, Rosetta Cannistra, should die before attaining the age of thirty (30) years, if my nephew, Anthony F. Cannistra, is still living, I direct that the entire income from said trust be thereafter paid to him and said trust continue until such time as my said niece would, if living, have attained the age of thirty (30) years.

"In the event that my said nephew, Anthony F. Cannistra, should die during the term of said trust and during the lifetime of my said niece, Rosetta Cannistra, then and in such event I direct that the entire income from said trust be thereafter paid to my said niece and the corpus of said trust be paid to said niece when she attains the age of thirty (30) years."

The niece and nephew, each of whom was sui juris and neither of whom had attained the age of 30 years, sought to terminate the trust. The Court refused to terminate the aforesaid testamentary trust even though all beneficiaries were sui juris and requested it and even though it did not contain a spendthrift trust clause, and even though there were no contingent remaindermen except the nephew and the niece. The Court reviewed numerous authorities and after quoting with approval language from *Bosler Estate*, 378 Pa., supra, and *Morgan's Estate (No. 1)*, 223 Pa., supra,

and *Borsch Estate,* 362 Pa., supra, hereinabove quoted, said (page 616) :

"This Court has wisely limited and restricted the termination of testamentary trusts whenever it could reasonably be said that one or more of the ultimate purposes of the testator for keeping the trust alive has not been fully accomplished. (See Bosler Estate, 378 Pa., supra, and Borsch Estate, 362 Pa., infra). Examples of the determination of this Court to carry out the testator's intent and to refuse to terminate a testamentary trust unless all of the purposes of the trust have been fulfilled and no ultimate reason for its continuance exists, may be found in the cases which hold that even where a gift is vested and all parties in interest are sui juris and petition the Court to terminate the trust, it will not be terminated if the will contains a spendthrift trust provision, or a sole and separate use provision, or a discretionary power in the trustee to pay or withhold part of the income or to terminate the trust. Spring's Estate, 216 Pa. 529, 66 A. 110; Wood's Estate, 261 Pa., supra."

*Bute Estate,* 355 Pa. 170, 49 A. 2d 339, which is relied upon by appellees, is sound law but is clearly inapposite. In *Bute Estate* testatrix bequeathed a life estate to her husband, with remainder to her daughter and her daughter's husband. Nine months after the life tenant's death, the son-in-law *renounced* and disclaimed any interest in the estate *prior to receiving any benefits thereunder.* This Court wisely held that the son-in-law did not have to pay any transfer inheritance tax on the interest which he renounced. *Bute Estate* merely holds that *no person may be compelled to accept a gift against his will,* if he has never accepted the gift. A person does not have to accept a gift or legacy (whether outright or in trust) ; but all

the authorities hold that he has to refuse or renounce or disclaim a gift of spendthrift trust income within a reasonable time after his right accrues and before he receives any income thereunder* (except to the very limited extent permitted by the Act of 1956, supra, in trusts created after 1956).

The decree dismissing the exceptions to the account of the Executors of Frederick C. Grote, deceased, filed for the deceased as Surviving Trustee under the trust indenture of Conrad H. Grote and his wife, dated October 29, 1917, and confirming said account, is modified by striking therefrom so much thereof as (1) terminated the trust, (2) directed distribution to Dorothy Grote Voss, Meta Christine Grote Uber, and Union National Bank, Guardian for Esther Grote Siegert, an incompetent, as the remaindermen, of the corpus of the trust estate, and (3) revoked the appointment of Potter Bank and Trust Company as Successor Trustee under the said trust indenture. As so modified, the decree is affirmed and the record remanded to the Court below for further proceedings consonant with this opinion; each party to pay their respective costs, except that the cost of printing the record shall be equally apportioned among the appellants.

---

* Furthermore, even if the law should permit a life tenant of a spendthrift trust to release his share of the income at any time after he has been receiving it (in this case for 23 years), it does not follow and it would be unjust to hold that such a release should operate to accelerate remainder interests where the effect of the acceleration is, as here, to defeat (1) the clear provisions of a trust (or will), and (2) the rights of (adult and minor) beneficiaries who have a contingent interest in the remainder.