## Brinton Estate

*J. Peter Williams*, for accountants.

*James L. Price*, for Commonwealth.

SHOYER, J., February 17, 1965.—Clarence C. Brinton died December 11, 1962, survived by his spouse, leaving a will.

By Item Fifth (1) of his will, testator gave to his trustees (to be held as a separate trust, called the Marital Trust) assets having in the aggregate a net value equal to the amount of the maximum marital deduction allowed in determining the Federal estate tax payable by reason of his death, less an amount equal to the aggregate net value of all other assets which shall be required to be included in his gross estate for purposes of said tax and which shall qualify for said marital deduction and which pass or shall have passed to his wife at any time or in any manner, in trust, to pay the net income therefrom to his wife, not less than quarter-annually, during her life, and upon her death to transfer and convey the principal thereof (together with all income theretofore accrued, due or received thereon and then undistributed), free of said trust, to such person, including her estate, in such shares and for such estates and/or upon such trusts, as she might by will, by specific reference therein to this power, appoint, with further provisions as more particularly set forth in paragraphs (2), (3) and (4) of Item Fifth.

By Item Sixth of his will, testator gave the rest of his property to his trustees, in trust, to pay the net income therefrom, not less often than quarter-annually, to his wife, Mary M. W. Brinton, for life, and, by subparagraph (2), upon the death of his wife to pay one-half of the principal (including as a part of such principal any property falling into this residue from the marital trust) as follows: [to four named charities, including the University of Pennsylvania];

and to pay the net income from all of the principal not required for the purposes specified in subparagraph (2), to his sister-in-law, Marion Evans Brinton, his nephew, Robert S. Brinton, and his niece, Elizabeth A. Brinton Greengo, and to the survivors or survivor of them, in equal shares, so long as they may respectively live; and upon the death of all of said sister-in-law, nephew and niece, to pay the principal, absolutely, as follows: [to four named charities, including the University of Pennsylvania].

By Item Tenth of his will, testator authorized the trustees, in the discretion of the disinterested trustees, to use principal for the emergency needs of any income beneficiary but provided that all such payments to the widow shall first be made from the Marital Trust until it is exhausted.

Testator directed that all estate, inheritance and succession taxes shall be paid out of the principal of his residuary estate.

Testator's widow has not filed an election to take under or against the will. As one full year has elapsed since the probate of the will, however, the law deems her failure to take any action as an acquiescence in the provisions of the said will: Wills Act of April 24, 1947, sec. 12(a). I find, therefore, in accordance with the law that she has so acquiesced.

Annexed hereto is a "Release and Disclaimer" which was filed on March 29, 1963, with the clerk of this court. The release and disclaimer was admittedly executed under seal on March 14, 1963, by Mary M. W. Brinton. It recites that the testator's widow does ". . . release, renounce and disclaim, irrevocably and forever, (1) any and all right, title and interest . . ." to any part of the principal, in any form, distributable to her under her husband's will.

Attached to the statement of proposed distribution is a letter dated May 23, 1963, addressed to the cor-

porate accountant by the Internal Revenue Service, questioning the effectiveness of the release and disclaimer in negating the enumerated powers of the disinterested trustees to use principal for Mrs. Brinton's benefit.

The University of Pennsylvania, one of the remaindermen, and the accountants, who are also the testamentary trustees, dispute the contention by the Federal Government.

Pursuant to the provisions of section 707 of the Orphans' Court Act of August 12, 1951, as amended by the Act of August 13, 1963, P. L. 670, sec. 1, 20 PS §2080.707, upon petition by the university, this court, by decree dated September 29, 1964, directed that a citation issue to the United States Attorney to show cause why the proper officer of the Federal Government should not be authorized to appear in these proceedings. The citation having been duly served, and no answer thereto having been filed, this court, by decree dated October 23, 1964, authorized the United States of America, through its proper officers, to appear in connection with the audit of the account.

Notwithstanding this authorization, no appearance has been entered for the Federal Government.

Section 3 of the Estates Act of April 24, 1947, P. L. 100, as amended, 20 PS §301.3, entitled "Release or Disclaimer of Powers or Interests.— (a) Powers and Interests Releasable", provides: "Any power of appointment, or power of consumption, whether general or special, other than a power in trust which is imperative, and any interest in, to, or over real or personal property held or owned outright, or in trust, or in any other manner which is reserved or given to any person by deed, will or otherwise, and irrespective of any limitation of such power or interest by virtue of any restriction in the nature of a so-called spendthrift trust provision, or similar provision, may be released or

disclaimed, either with or without consideration, by written instrument signed by the person possessing the power or the interest and delivered as hereinafter provided, but nothing in this section shall authorize an income beneficiary of a spendthrift trust to release or disclaim his right to such income, unless as a result of the release or disclaimer the released or disclaimed income will pass to one or more of the beneficiary's descendants."

It is important to note that the release and disclaimer is of all interest in the principal (including capital gains), but does not affect the widow's right to income from the residuary trust during her lifetime. So far as the intended renunciation of capital gains and other benefits declared to be income under the Pennsylvania law goes, our appellate decisions do not permit termination of a spendthrift trust by a life tenant: Harrison's Estate, 322 Pa. 532. In that case the University of Pennsylvania, the same charitable remainderman as here, and the income beneficiary sought termination under the Act of April 14, 1931, P. L. 29, since repealed. That act provided that where all parties interested in a trust that has a vested remainder to a charitable, literary, scientific or religious body agree that it shall be terminated upon mutually satisfactory terms, or where the interest of beneficiaries has been donated to, or otherwise acquired by such remainderman, the court may direct that the trust be ended in whole or in part. Our Supreme Court held that in the absence of an "express, definite and positive statutory provision" there could be no "destruction of the very essentials of such a valid testamentary [spendthrift] disposition of property."

Such assignments of accrued spendthrift income as our appellate courts do recognize, may be repudiated at any time by the beneficiary: Heyl Estate, 352 Pa.

407; Keeler's Estate, 334 Pa. 225; for "[i]t is clear that the refusal of a spendthrift income beneficiary to receive the income does not enable the remainderman thereby to terminate the trust": Borsch Estate, 362 Pa. 581, 585. See also Grote Trust, 390 Pa. 261, 273, where the above principle of law as expressed by Mr. Justice Allen M. Stearne was cited and approved. Section 3 (a) of the Estates Act of April 24, 1947 is clearly effective as to principal, however, the exception as to a beneficiary's descendants with regard to income being inapplicable to the present facts.

In Bute Estate, 355 Pa. 170, it was held that no person can be compelled to accept a gift, even when there is a spendthrift provision annexed to it, if he disclaims the gift within a reasonable time after his right accrues and before he has received any benefit from it. See also Grote Trust, supra, at page 279. It is uncontradicted that Mrs. Brinton, the life tenant, did not receive any share of the principal or income of the trust before she filed her disclaimer, and I so find as a fact. I further find that the filing of the instant disclaimer was timely and within the permissive provision of section 3 of the Estates Act of 1947, supra. What the widow thus promptly disclaimed was a contingent interest in an indeterminate amount of principal of the residuary trust. I find that the disclaimer not only precludes the widow from demanding any part of the principal of the residuary trust, but also prevents the trustees from forcing any share of the principal upon her: See Bregy, Intestate, Wills and Estates Act of 1947, pp. 5225 and 8089; Estate of James M. Schoonmaker, Jr., 6 T.C. 404, 411.

And now, February 17, 1965, the account is confirmed nisi.