## Zindel Estate

*Peter O. Steege,* for Estate.
*John J. Kennedy,* for Commonwealth.

SAWYER, *P.J.*, September 22, 1982—In the matter of the within Estate of William H. Zindel, a dispute has arisen concerning the rate of inheritance tax that must be paid upon certain assets which testator had placed in a non-marital trust. The dispute arises under Pennsylvania Inheritance Tax Laws, 72 P.S. §§2485-403 and 2485-404, which set differing rates of taxation based upon the relationship of the recipient to the testator:

"§2485-403. Rate of tax; Class A.

Inheritance tax upon the transfer of property passing to or for the use of any of the following shall be at the rate of six (6) percent:

(1) Grandfather, grandmother, father, mother, husband, wife and lineal descendents;

(2) Wife or widow, and husband or widower of a child.

§2485-404. Rate of tax; Class B.

Inheritance tax upon the transfer of property passing to or for the use of all persons other than those designated in section 403, shall be at the rate of 15 percent."

The parties involved in this dispute are testator's widow, Alice S. Zindel, and the Commonwealth of Pennsylvania, Department of Revenue. The facts are somewhat complex as to what transpired following testator's death, and these events are described below as stipulated to by the parties.

William H. Zindel died on October 8, 1978, a resident of Beaver County. Mr. Zindel's will made certain specific bequests and arranged for payment of debts and expenses; these provisions are not at issue here. The will next created two trusts to be administered by Pittsburgh National Bank. The first of these was a marital trust for the benefit of the widow, and she subsequently obtained full ownership and control of the marital trust property which was taxed at six percent in accord with section 2485-403. No further tax controversy exists as to this property.

It is the second trust which gives rise to this action. This trust was created by testator as a non-marital residuary trust, with net income therefrom to be paid to the widow during her life, along with such amounts of the principal as the trustee in its sole discretion might allow for purposes of the widow's health, maintenance and support. Upon the death of the widow, the principal is to be distributed: first, $1,000 each to eight named nieces

and nephews of the widow, and second, the balance in equal shares to five named persons, also relatives of the widow. The result of this testamentary plan is that the widow's access to the residuary trust property is restricted, and the principal will ultimately go to the widow's relatives as named. Testator left no other close relatives except his widow.

The widow expressed dissatisfaction with the non-marital residuary trust structure and requested that this trust also not be created as directed. The widow's relatives named in the will also agreed that these trust restrictions were not in the best interests of the widow. Consequently, the widow and her relatives executed documents to change the result. On February 26, 1980, the widow signed and acknowledged a disclaimer, disclaiming all her right, title and interest in the non-marital trust property. This disclaimer was filed by her attorney at the office of the clerk of orphans' court on July 31, 1980. At the same time, her counsel also filed assignments executed on February 29, 1980, in which the non-marital trust remaindermen assigned their entire interests to the widow. Pursuant to these actions a decree of personalty was issued on October 9, 1981, authorizing distribution of the remaining non-marital residuary estate of $85,004.58 as follows: $8,000 thereof to be distributed as eight $1,000 bequests to eight collateral devisees and the balance of $77,004.58 to the widow.

Subsequent to the vesting of full ownership in the widow, the Inheritance Tax Division of the Pennsylvania Department of Revenue assessed the non-marital residuary trust property at a rate of 15 percent, claiming that it passed to collateral heirs from decedent and so falls within section 2485-404.

With respect to the specific bequests of $1,000 to each of eight named beneficiaries that were paid, all the parties in this case have agreed that these amounts clearly fall under section 2485-404 and so are to be taxed at 15 percent. No further dispute exists as to these sums. With respect to the $77,004.58 residue from the non-marital trust, the widow takes the position that the disclaimer and assignments were simultaneous, thus causing an immediate vesting in the widow directly and so should be taxed at the lower rate of six percent under section 2485-403. Consequently, the widow appealed the additional assessment to the Board of Appeals which upheld the higher tax rate in its decision on February 2, 1982. She has now appealed that decision to this court.

We hold that, due to the transactions of July 31, 1980, the property of the residuary trust passed from decedent's estate to the collateral heirs who had been named remaindermen. Their assignments then effected a conveyance to the widow who now has full title, interest and control. By virtue of passage through the collateral heirs, the residuary property is thus subject to taxation at the rate of 15 percent under section 2485-404.

Among the issues raised by the widow's appeal are the effect of her disclaimer, the result of an assignment by the remaindermen, and correlative to these issues, the time at which the interest vested and in whom. The widow has asserted her right to disclaim her life estate in the residuary trust property. Her right to do so is clearly authorized by the Pennsylvania Estates and Fiduciaries Code, 20 Pa.C.S.A. §6201 et seq.:

"§6201. Right to disclaim
A person to whom an interest in property would

have devolved by whatever means, including a beneficiary under a will, an appointee under the exercise of a power of appointment, a person entitled to take by intestacy, a donee of an inter vivos transfer, and a person entitled to a disclaimed interest, may disclaim it in whole or in part by a written disclaimer which shall (1) describe the interest disclaimed, (2) declare the disclaimer and extent thereof, and (3) be signed by the disclaimant."

The right to disclaim shall exist notwithstanding any limitation on the interest in the nature of a spendthrift provision or similar restriction.

Mrs. Zindel satisfactorily executed such a disclaimer and so had effectively relinquished all interest in the residuary trust. As the last sentence of section 6201 indicates, she was fully able to disclaim her interest although there was spendthrift restriction upon the use of the funds during her life. (Will, Paragraph Fifth, II). A beneficiary of a will or trust cannot be compelled to accept a bequest, devise or gift: Bute Estate, 355 Pa. 170, 49 A. 2d 339 (1946). Although it is true that once accepted, an interest in a spendthrift trust cannot be disclaimed, Grote Trust, 390 Pa. 261, 135 A. 2d 383 (1957), the interest here was never accepted since, as the parties stipulated, the trust was never created or endowed with any specific principal assets. Therefore, Mrs. Zindel could never have received any benefit or income from the trust. We hold that she was thus fully able to disclaim her interest and that she effectively did so by signing and acknowledging a written disclaimer on February 26, 1980, and filing the same on July 31, 1980.

The effect of Mrs. Zindel's disclaimer is ad-

dressed in the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §6205:

"§6205. Effect of disclaimer

(a) In general.—A disclaimer relates back for all purposes to the date of the death of the decedent or the effective date of the inter vivos transfer as the case may be. The disclaimer shall be binding upon the disclaimant and all persons claiming through or under him.

(b) Rights of other parties.—Unless a tester or donor has provided for another disposition, the disclaimer shall, for purposes of determining the rights of other parties, be equivalent to the disclaimant's having died before the decedent in the case of a devolution by will or intestacy or before the effective date of an inter vivos transfer, except that, when applying Section 2104(1)(relating to rules of succession) or analogous provisions of a governing instrument, the fact that the disclaimant actually survived shall be recognized in determining whether other parties take equally or by representation."

For purposes of the residuary trust, section 6205(a) makes it clear that the disclaimer is effective from the moment of decedent's death, and so it is as if Mrs. Zindel's life estate never existed. Subsection (b) confirms this by stating that the disclaimant shall be regarded as predeceasing the testator. It is apparent, therefore, that a life estate could not accrue to one regarded by the law as already deceased.

In the absence of the life estate in his widow, the testator's alternative disposition may be given effect as indicated in section 6205(b). Here, the testator has provided that, if his wife has predeceased

him, the residuary trust principal shall go to the specific named beneficiaries, the same as if the life estate had vested and later terminated. The specific gifts and the remainder interests are merely accelerated by Mrs. Zindel's disclaimer: Disston's Estate, 257 Pa. 537, 101 A. 804 (1917); Sousa Estate, 14 D. & C. 3d 700 (1980). It should be noted that some courts have held it improper to accelerate remainders in a spendthrift trust: Grote Trust, supra. However, here the testator clearly and succinctly stated that, in the event the life estate does not come into effect, then the specific recipients and remaindermen should take at the time of failure of the life estate.

If this were the extent of the measures taken by the beneficiaries, the remainder takers would have clear ownership of the principal assets and the trust would terminate as having no further purpose. The tax consequences are clear in such a case—the devolution of property would be taxable at the rate of 15 percent, section 2485-404, since the assets came to rest in the hands of collateral heirs. "[W]hen the beneficiary renounces his legacy, he is absolved from any obligation to pay an inheritance tax thereon and the succession becomes taxable only in accordance with the ultimate devolution of the property." Bute Estate, supra, 355 Pa., at 174.*

---

*We note that there is a distinction in the law between a disclaimer, 20 Pa.C.S.A. §6201, and renunciation as discussed in 72 P.S. §2485-406. An effective renunciation for Federal Estate and Pennsylvania Inheritance Tax purposes is limited to within a certain time period following decedent's death, while a disclaimer has no such specific limitation. The action of Mrs. Zindel, et al, was beyond the time limits and so is here considered to be a disclaimer in name and effect. However, both renunciations and disclaimers constitute refusal to accept property interests and case law often uses the terms inter-

In order for the remainder interests in this case to accelerate, as we hold that they did, it is necessary that they be vested remainders, and not contingent; a contingent remainder does not accelerate upon the determination of the preceding life estate, but instead depends upon the occurrence of the contingency as well: Gunning's Estate, 234 Pa. 144, 83 A. 61 (1912). The law presumes a remainder to be vested unless there is a clearly expressed contingency attached: Hope Estate, 398 Pa. 470, 459 A. 2d 197, (1960). Where the only condition imposed is the determination of a preceding life estate, the remainder is vested: 28 Am. Jur. 2d Estates, §217. Here, the remainders in the relatives of the widow were certain to vest upon the widow's death and there is no ther condition precedent to taking; the remainders are no less vested by reason of the fact that an individual remainder interest will go to the issue of a taker who dies prior to the life tenant.

"Where a bequest in a will is made payable at a future time which is certainly to arrive, and not subject to a condition precedent, it is vested where there is a person in esse, at the time of the decedent's death who is capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death."

Everson v. Everson, 264 Pa. Superior Ct. 563, at 569, 400 A. 2d 887 (1979). The vested quality of these remainders, along with testator's expression of intent to accelerate the remainders in absence of the wife's life estate, cause the widow's relatives to

changeably: Grote Trust, supra. Although Bute, supra, involved a renunciation, we are of the opinion that the holding in Bute applies to disclaimer cases as well. See Uhrich Estate, 7 D. & C. 2d 126 (1956).

receive vested interests which became present ownership upon the disclaimer by the widow.

However, the widow asserts that her disclaimer was filed *simultaneously* with the assignments to her, and so she asks that we find the ultimate devolution of the property was to her and thus taxable at the lower rate. This we cannot do. Mrs. Zindel likens her situation to that in Bute Estate, supra, claiming that as ultimate recipient of the property, she should have the benefit of the widow's tax rather than the collateral rate. The manner in which these transactions occurred makes it impossible for us to allow the lower rate. Mrs. Zindel would have us treat these occurrences as a kind of family compromise, of the sort covered by section 2485-407, wherein a good faith compromise of rights incurs tax based on the ultimate devisee's status. However, there has been no compromise here since there was no give-and-take relationship; the remaindermen simply transferred their entire interests to the widow, without consideration, which was in the nature of a gift conveyance rather than a compromise.

We now turn to the characterization of these transfers as conveyances. Upon Mrs. Zindel's disclaimer, the result, as above, is a creation of full ownership in the relatives. There is a presumption that a devisee accepts a beneficial gift, and there must be clear and unequivocal evidence to show renunciation or disclaimer rather than acceptance: Roop v. Greenfield, 352 Pa. 232, 42 Atl. 2d 614 (1945). Mrs. Zindel clearly manifested a disclaimer but the remaindermen did not. On the contrary, they expressly assigned the property away, which is a positive act of dominion over the property, thus indicating acceptance of the incidents of ownership.

"[R]efusal to accept would leave it part of the testator's residuary estate. But the refusal must be absolute and unqualified, not merely in word but in deed. However positive the terms of refusal, they may be made ineffective by conduct inconsistent with a refusal such as acts of dominion over the property. A gift to another is unquestionably such an act, since it is only by virtue of the bequest that it can be thus disposed of."

Wonsetler v. Wonsetler, 23 Pa. Superior Ct. 321 (1903). The assignments executed by Mrs. Zindel's relatives expressly state "I hereby transfer and assign all my right, title and interest . . . " and thus are clear acts of dominion. These acts are indicative of ownership, much as deeding a parcel of real estate acknowledges ownership of it: Minner v. City of Pittsburgh, 363 Pa. 199, 69 A. 2d 384 (1949). The conveyance of inherited property by release or quitclaim has been held to be simultaneous acceptance and conveyance, McQuiddy Printing Co. v. Hirsig, 23 Tennessee Appellate Court 434, 134 S.W. 2d 197 (1939) and the motive therefor is immaterial. We hold the assignments in the instant case to have been conveyances indicative of ownership and acceptance.

The tax consequences of these conveyances are apparent: the collateral rate of 15 percent applies. Collateral taxation "cannot be evaded by a conveyance or assignment to one whose right of succession is not subject to the tax." Frank's Estate, 9 Pa. County Court Reports 662 (1891). The passage of title is the crucial factor here, with the resulting attachment of the collateral tax. In a case analogous to the instant one, it was held that where a priest was individual legatee, his subsequent attempt to assign the property to his church failed to

relieve him of the individual tax rate. The tax was owed despite ultimate receipt by a charitable institution: Nolan Estate, 37 D. & C. 2d 522 (1965). In the instant case, the fact is that title to the remainder interest was reposed in the collateral devisees for however short a time so as to allow the devisees to effect a gift conveyance to the widow, and the consequences of ownership in these collateral devisees cannot be ignored: Neeld's Estate, 38 D. & C. 381 (1940). We cannot ignore the fact that the remaindermen gained title, and so had the power to assign or convey the property to anyone of their choosing; that they assigned it to the widow is not determinative. It is the transfer from decedent to the collateral devisees that is taxable under §2485-404, and so the subsequent transfer to the widow cannot prevent taxation at the collateral rate of 15 percent on the property interest involved in the transfer.

## ORDER

And now, September 22, 1982, for the reasons found in the within opinion, the appeal of Mrs. Alice Zindel is hereby dismissed, and the Estate of William H. Zindel is ordered to pay the remaining balance due under the official notice of inheritance tax assessment as filed in the Office of the Register of Wills of Beaver County on August 27, 1981.